OPINION
{¶ 1} Plaintiff-appellant Tiffany Seymour appeals from the August 8, 2005, Judgment Entry of the Stark County Court of Common Pleas denying her Motion for a New Trial.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On August 11, 2003, at approximately 10:30 a.m., the motor vehicle that appellant Tiffany Seymour was driving was rear ended by a motor vehicle driven by appellee Lisa Pierson. At the time of the accident, appellee was driving approximately 35 miles per hour. Appellee's vehicle, which was deemed to be a total loss, had to be towed from the scene while the vehicle driven by appellant cost $2,400.00 to repair.[1]
 {¶ 3} Subsequently, on March 23, 2004, appellant filed a complaint against appellee alleging that, as a result of appellee's negligence, she suffered injuries to her neck, back, head, shoulders and other parts of her body as well as "loss of life's enjoyment." After appellee admitted negligence, a jury trial on damages was held on May 26, 2005.
 {¶ 4} Appellant's mother, Jacqueline Seymour [hereinafter Seymour], testified at trial that appellant lived with her while going to school part time and working part time for MRDD taking care of mentally challenged people. When appellant called Seymour at around 4:00 and 5:00 p.m. on August 11, 2003, she told Seymour that she had been in an accident and indicated that she was not in any pain. According to Seymour, when appellant came home from work later that night at around 10:30 p.m., she "said she felt a little tight." Transcript at 132. Seymour further testified appellant did not go to a doctor right after the accident since it was her first day of work and she did not want to miss the same. When asked why appellant did not miss any school or work because of the accident, Seymour testified that it was because appellant was "dedicated." Transcript at 133.
 {¶ 5} According to Seymour, the night after the accident, appellant was "moving around kind of slow" and said "she felt kind of tight." Transcript at 133. The following testimony was adduced when Seymour was asked how long after the accident she noticed appellant was in pain:
 {¶ 6} "A. Every, every day, you know, I could tell, you know, she had a problem. You know, sometime, you know, I would just look at her and, you know, she was just moving around slowly, go to her room.
 {¶ 7} "Q. How could you tell she was in pain?
 {¶ 8} "A. Her actions.
 {¶ 9} "Q. Did you ever do anything to help Tiffany?
 {¶ 10} "A. Yes, she would ask me for a back massage and I would give her a massage, you know.
 {¶ 11} "Q. What part of her back would you massage?
 {¶ 12} "A. Um, majority — the middle mostly and sometime I would try to do her all over, but she would always tell me a more specific area." Transcript at 133-134.
 {¶ 13} On cross-examination, Seymour testified that appellant "did not complain a whole lot." Transcript at 141.
 {¶ 14} At the trial in this matter, appellant testified that right after the accident, she told appellee that she was fine because she did not feel at that point that she was injured. After the accident, appellant went home and then at 2:30 p.m. went to work with MRDD, where she takes care of disabled individuals. When she spoke with her mother between 4:00 and 5:00 p.m. the same day, appellant told her mother that she was okay.
 {¶ 15} At trial, appellant testified that at approximately 1:00 p.m. on August 11, 2003, she felt "tightness" and that when she arrived home from work at between 10:30 and 10:45 p.m. after working the entire day, she felt "real stiff" and was sore. Transcript at 159. The following testimony was adduced when appellant was asked how she felt when she got home from work:
 {¶ 16} "A. Real stiff and —
 {¶ 17} "Q. Where —
 {¶ 18} "A. — in my head pressure.
 {¶ 19} "Q. Where were you stiff at?
 {¶ 20} "A. In my back and my neck, the mid part of my back of my head, and my eyes and my face was — I, I was just sore.
 {¶ 21} "Q. Did you complain to your parents about that?
 {¶ 22} "A. Yes, I did." Transcript at 159.
 {¶ 23} The next day, appellant went to see Dr. Powell, a chiropractor.[2] Appellant testified that when she went to see Dr. Powell, her neck, head and back were hurting and she felt like she "was beat up." Transcript at 160. The first week after the accident, appellant saw Dr. Powell three times and continued seeing him twice a week. After the first month of treatment with Dr. Powell, appellant's muscles were still tight in her neck and her back was still bothering her. When asked, appellant testified that she did not miss any school or work as a result of the accident and that she was still able to fulfill her monthly obligations to the Army Reserves, although she required assistance to do so. Appellant testified that, as part of her Army Reserve duty, she works with heavy hoses on fuel trucks and that she had to have assistance from her colleagues in dealing with the hoses.
 {¶ 24} At trial, appellant also testified that, after her first month of treatment with Dr. Powell, she had adjustments and shock therapy and also received electrical stimulation. Appellant further testified that her treatment involved the use of cold packs and physical therapy at Dr. Powell's office.
 {¶ 25} Testimony was adduced at trial that, on January 1, 2004, appellant was involved in another automobile accident. At the time of the accident, appellant was still seeing Dr. Powell. Appellant testified that the accident involved a low impact collision, that her car did not have any scrapes as a result of the accident, and that she was not injured in the accident, but just had a headache. When asked whether the January 1, 2004 accident, aggravated her neck or back in any way, appellant responded in the negative.
 {¶ 26} During January of 2004, appellant saw Dr. Powell twice a week. During the remainder of 2004, she saw him four or five times since she "was still having discomfort" in her neck and back. Transcript at 168.
 {¶ 27} At trial, appellant also testified that she went to see Dr. Daniel Dorfman, who is board certified in physical medicine and rehabilitation, in September of 2004 because she had muscle spasms in her neck and back and would "cramp up". Transcript at 169. Testimony was adduced at trial that appellant was involved in another automobile accident in October of 2004, shortly after she began seeing Dr. Dorfman, when a truck ran into her car. Appellant testified that, prior to this accident, she had been feeling better. After her October of 2004 accident, appellant was taken to the emergency room. She then saw Dr. Dorfman a couple of times before resuming treatment with Dr. Powell.
 {¶ 28} During direct examination, appellant also testified that she previously had treated with a chiropractor in July of 2002 when she pulled a muscle in her back. Appellant saw the chiropractor two or three times over a two week period for such injury and she was fine after the two weeks. In addition, appellant also testified that she was involved in an automobile accident in 2001. While she was not injured in the 2001 accident, a personal injury lawsuit was filed against her as a result.
 {¶ 29} On cross-examination, appellant testified that when she called her mother on August 11, 2003, at around 5:00 p.m., she told her mother she was stiff from the accident. Appellant indicated that her mother was mistaken when she testified that appellant did not complain about being injured until 10:30 p.m. that night. Appellant further testified that, after her first visit with Dr. Dorfman, she was substantially improved and that her spasms were gone because of the medication that he put her on. When asked, appellant testified that when she went back to Dr. Dorfman on October 29, 2004, she had no problems related to the August 11, 2003, accident.
 {¶ 30} After appellant testified, Dr. Dorfman's testimony was submitted to the jury via video deposition.[3] During his deposition, Dr. Dorfman testified that appellant came to see him in September of 2004 "because of ongoing neck and low back complaints following the motor vehicle accident of August of 2003." Dr. Dorfman's Deposition at 11. Dr. Dorfman testified that, during his physical examination of appellant, he found tenderness in the lower part of her neck, in her upper shoulder areas and in her lower back. The following testimony was adduced when Dr. Dorfman was asked his initial diagnosis of appellant's condition:
 {¶ 31} "A. My impression was that she was status post motor vehicle collision in August of 2003, and she sustained cervical and lumbar strain indicative of classic whiplash.
 {¶ 32} "I thought that she had some ongoing soft tissue pain in the cervical and upper trapezius ridge, which is just the part in the upper shoulder area here (indicating), as well as some lower back — as well as in the lower lumbar region . . ." Dr. Dorfman's Deposition at 13. Dr. Dorfman further testified that whiplash was a painful condition.
 {¶ 33} After his initial visit with appellant, Dr. Dorfman put appellant on an anti-inflammatory and a muscle relaxant. When appellant saw the doctor again on September 29, 2004, which was approximately two weeks after her initial visit, appellant "had really responded favorably to the medication" and "wasn't having as much of the sharp pain that she previously was experiencing, . . ." Dr. Dorfman Deposition at 16.
 {¶ 34} On cross-examination, Dr. Dorfman testified that appellant had a full range of motion in her neck on September 14, 2004, which was her initial visit with him. Appellant saw Dr. Dorfman for her August 11, 2003, accident through October of 2004.
 {¶ 35} At the conclusion of the evidence and the end of deliberations, the jury, on May 26, 2005, returned a verdict in favor of appellant and against appellee. The jury awarded appellant $6,400.00 in medical expenses, but did not award appellant any damages for pain and suffering or for loss of enjoyment of life.
 {¶ 36} Thereafter, on June 10, 2005, appellant filed a Motion for a New Trial pursuant to Civ.R. 59(B), arguing that she was entitled to a new trial since the judgment was against the manifest weight of the evidence. Appellant, in her motion, specifically argued that "[t]he fact that the jury awarded medical expenses, but did not award damages for pain and suffering and loss of life's enjoyment is inconsistent with the evidence proven at trial."
 {¶ 37} Pursuant to a Judgment Entry filed on August 8, 2005, the trial court denied appellant's motion, stating that "the jury's verdict and interrogatory answers were consistent with a finding that Plaintiff's pain and suffering and loss of life's enjoyment were not proven by a preponderance of the evidence, and that only a portion of Plaintiff's medical expenses were proximately caused by Defendant's negligence."
 {¶ 38} Appellant now raises the following assignment of error on appeal:
 {¶ 39} "THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL AS THE JURY VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I {¶ 40} Appellant, in her sole assignment of error, argues that the trial court erred in denying her Motion for a New Trial since the jury verdict was against the manifest weight of the evidence. We disagree.
 {¶ 41} Appellant specifically alleged that she was entitled to a new trial pursuant to Civ.R. 59(A)(6). Civ. R. 59 states, in relevant part, as follows:
 {¶ 42} "(A) Grounds
 {¶ 43} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: . . .
 {¶ 44} "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case; . . ."
 {¶ 45} The granting of a new trial rests in the sound discretion of the trial court. Civ.R. 59. See also Brooks v.Wilson (1994), 98 Ohio App.3d 301, 648 N.E.2d 552. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140. Thus, we must look at the totality of circumstances and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 46} When considering a Civ.R. 59(A)(6) motion, the trial court must weigh the evidence and pass on the credibility of the witnesses. The trial court's consideration of weight and credibility is not the same as that employed by the jury, but in a more restricted sense of whether it appears to the trial court that manifest injustice has been done and that the verdict is against the weight of the evidence. Rohde v. Farmer (1970),23 Ohio St.2d 82, 262 N.E.2d 685, paragraph three of the syllabus. A trial judge should "`abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result.'" Bland v. Graves (1993),85 Ohio App.3d 644, 651, 620 N.E.2d 920.
 {¶ 47} Further, "[i]t is the function of the jury to assess the damages, and generally, it is not for a trial or appellate court to substitute its judgment for that of the trier-of fact."Betz v. Timken Mercy Med. Ctr. (1994), 96 Ohio App.3d 211, 218,644 N.E.2d 1058. Generally, a new trial should be granted pursuant to Civ.R. 59(A)(6) where it appears that the jury awarded inadequate damages because it failed to consider an element of damages established by uncontroverted expert testimony. Baum v. Augenstein (1983), 10 Ohio App.3d 106,107-108, 460 N.E.2d 701. However, if the verdict is supported by substantial competent, credible evidence, a trial court abuses its discretion in granting a new trial based upon the weight of the evidence. Hancock v. Norfolk Western Ry. Co. (1987),39 Ohio App.3d 77, 81, 529 N.E.2d 937; Verbon v. Pennese (1982),7 Ohio App.3d 182, 183, 454 N.E.2d 976; and Dillon v. Bundy
(1991), 72 Ohio App.3d 767, 596 N.E.2d 500.
 {¶ 48} In the case sub judice, we find that the trial court did not abuse its discretion in denying appellant's Motion for a New Trial since the trial court's decision was not arbitrary, unconscionable or unreasonable.
 {¶ 49} Testimony was adduced at trial that appellant did not miss any work or school as a result of the August 11, 2003, accident and, in fact, worked the full day of the accident. Nor did appellant miss any of her monthly commitments to the Army Reserves.
 {¶ 50} Testimony also was adduced that, when appellant spoke with her mother at 4:00 or 5:00 on August 11, 2003, and told her mother that she had been in an accident, appellant did not indicate that she was injured or suffering from any pain. Appellant herself testified that she told the police at the scene of the accident that she was fine. Photographs of appellant's car that were admitted into evidence at trial show only superficial damage to the bumper.
 {¶ 51} As is stated above, appellant testified at trial that she was stiff and sore later during the day of the accident. However, according to appellant's mother, appellant did not complain much. Moreover, while appellant testified that she told her mother, during a telephone call five or six hours after the accident, that she was experiencing pain in the form of stiffness, appellant's mother testified that appellant told her that she was not in any pain at that time. Furthermore, while appellant testified that she did not go to the emergency room after her later accident on January 1, 2004, appellant's mother testified that she did. In short, based on the above, the jury, as trier of fact, may have found appellant less than credible.
 {¶ 52} Furthermore, at trial, Dr. Dorfman testified that the tenderness of which appellant complained more than one year after the accident was not objectively verifiable, but was based on appellant's subjective complaints. As is stated above, between appellant's August 11, 2003, accident and her initial visit to Dr. Dorfman in September of 2004, appellant was involved in another accident. Appellant also was taken to the hospital following another accident in October, 2004. While appellant did not tell her medical doctor that her neck was injured in the October, 2004, accident, several months later she told her chiropractor that it was. The jury, as trier of fact, could reasonably have concluded, given the contradictory testimony, that appellant's complaints of pain were related to her later accidents, rather than to the accident in this case.
 {¶ 53} Based on the foregoing, we find that the trial court's decision denying appellant's Motion for a New Trial was not arbitrary, unconscionable or unreasonable.[4]
 {¶ 54} Appellant's sole assignment of error is, therefore, overruled.
 {¶ 55} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed.
Edwards, J. Farmer, P.J. and Boggins, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed. Costs assessed to appellant.
[1] At trial, appellant testified that the cost to repair her car totaled $900.00 for used parts and $1,500.00 for new parts.
[2] Dr. Powell did not testify at trial.
[3] A transcribed copy of Dr. Dorfman's deposition was filed with the trial court.
[4] In contrast, in Brozovic v. Granjean, Stark App. No. 2005CA00151, 2005-Ohio-6950, this Court held that the trial court had erred in denying the appellant's Motion for a New Trial. InBrozovic, unlike in the case sub judice, the appellant testified that he did not feel well immediately after the accident. Furthermore, there was testimony that the appellant inBrozovic could not "do much of anything at work" and was unable to resume his normal activities two months after his accident. There was no such testimony in the case sub judice.