DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Plaintiff-Appellant Michael Brown has appealed from the judgment of the Lorain County Court of Common Pleas that denied his motion for a new trial. This Court affirms.
 I {¶ 2} Appellant was involved in a car accident with Defendant-Appellee Dyan Mariano on November 29, 2001. Following the accident, Appellant incurred numerous medical expenses, including the expense of a surgery to repair a torn rotator cuff. As a result of that surgery and its corresponding injury, Appellant missed substantial time from his place of employment, the City of Oberlin, as a laborer. Specifically, Appellant's job included throwing heavy trash bags and other labor tasks which could not be performed with his shoulder condition.
 {¶ 3} Appellant filed suit against Appellee in November of 2003, claiming that his injuries were a result of Appellee's negligence. Prior to trial, Appellee stipulated that she negligently operated her motor vehicle. Specifically, Appellee swerved to avoid another car in front of her and hit the van in which Appellant was seated which was parked near the edge of the roadway. The matter was then tried to a jury on the issue of damages. At the conclusion of the evidence, the jury returned a verdict in favor of Appellant, but it awarded zero damages. Appellant moved for a new trial under Civ.R. 59(A)(6), asserting that the jury's verdict was against the manifest weight of the evidence. On September 26, 2005, the trial court denied Appellant's motion for a new trial. Appellant has timely appealed from the trial court's judgment, raising one assignment of error for review.
 II Assignment of Error "THE TRIAL COURT ERRED AND ABUSED IT DISCRETION WHEN IT DENIED APPELLANT'S CIVIL RULE 59(A) MOTION FOR A NEW TRIAL."
 {¶ 4} In his sole assignment of error, Appellant has asserted that the trial court erred in denying his motion for a new trial. Specifically, Appellant has argued that he clearly demonstrated some injury and that the jury's award of zero damages was clearly erroneous. We disagree.
 {¶ 5} Appellant challenges the jury verdict regarding damages and the proximate cause of his injuries as being against the manifest weight of the evidence, per Civ.R. 59(A)(6). "When an appellate court reviews the grant or denial of a motion for a new trial as against the weight of the evidence, the appellate court does not directly review whether the judgment was against the manifest weight of the evidence." Snyder v.Singer (May 17, 2000), 9th Dist. No. 99CA0020, at *3, citing Malone v.Courtyard by Marriot L.P. (1996), 74 Ohio St.3d 440, 448. When considering a Civ.R. 59(A)(6) motion for a new trial, a trial court must weigh the evidence and pass on the credibility of the witnesses.Edwards v. Haase (Aug. 1, 2001), 9th Dist. No. 3121-M, at *2. However, the trial court assesses the weight and credibility in a more limited sense than would a jury; the court is to determine, in light of its broad discretion, whether a manifest injustice has occurred. Id., citingRohde v. Farmer (1970), 23 Ohio St.2d 82, paragraph three of the syllabus. Thus, an appellate court reviews the court's decision on that matter for an abuse of discretion. Rohde, 23 Ohio St.2d at paragraph one of the syllabus. Absent some indication that the trial court's exercise of its discretion was unreasonable, arbitrary, or unconscionable, the judgment of the trial court will not be disturbed. Snyder, supra, at *3.
 {¶ 6} A trial judge should "abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result." (Internal quotations omitted.) Bland v. Graves (1993),85 Ohio App.3d 644, 651. Where a verdict is supported by competent substantial and apparently credible evidence, a motion for a new trial will be denied. Verbon v. Pennese (1982), 7 Ohio App.3d 182, 183. Additionally, in reaching its verdict, the jury is free to believe all, part, or none of the testimony of each witness. State v. Jackson (1993),86 Ohio App.3d 29, 33.
 {¶ 7} Furthermore, "[i]t is the function of the jury to assess the damages, and generally, it is not for a trial or appellate court to substitute its judgment for that of the trier-of fact." Betz v. TimkenMercy Med. Ctr. (1994), 96 Ohio App.3d 211, 218. Generally, a new trial should be granted pursuant to Civ.R. 59(A)(6) only where it appears that the jury awarded inadequate damages because it failed to consider an element of damages established by uncontroverted testimony. Baum v.Augenstein (1983), 10 Ohio App.3d 106, 107-108,
 {¶ 8} In support of his argument, Appellant has argued that the following stipulation mandates the award of some damages:
 "The Defendant, Dyan Mariano, was negligent, and that negligence was the proximate cause of some injury to Plaintiff. The only issue that you will decide is the amount of damages that will fully and fairly compensate Plaintiff for the injuries directly and proximately caused by Defendant's negligence[.]"
Appellant has extrapolated from this stipulation that the jury was required to award him at a minimum nominal damages. Specifically, Appellant has effectively argued that "some injury" is synonymous with "some compensable injury." We disagree.
 {¶ 9} In the trial court, Appellant relied upon three distinct injuries: an injury to his back; an injury to his neck; and an injury to his shoulder. We address each of those injuries individually.
Shoulder Injury
 {¶ 10} Throughout the proceedings below, Appellee contested the fact that Appellant's shoulder injury resulted from the accident. In support of her claim, Appellee relied upon the testimony of Appellant and the testimony of her expert, Dr. Albert King.
 {¶ 11} Appellant testified that he was unaware that he had been in an accident. Specifically, Appellant testified that he was unaware an accident had occurred until two people approached his vehicle to ask if he had been injured. Appellant further testified as follows:
 "Q. Your body didn't move upon impact, did it?
 "A. Not that I remember, no.
 "Q. Okay. It didn't move forward?
 "A. No.
 "Q. It didn't move from side to side?
 "A. No.
 "Q. You stayed right where you were at?
 "A. Yes.
 "Q. Your shoulder and your left arm didn't strike anything on the interior of the car, did it — or the van?
 "A. No, it didn't."
 {¶ 12} Dr. King testified on behalf of Appellee on the issue of causation. Dr. King testified that he has a Ph.D. in biomechanical engineering, the study of the effect of forces upon the human body. Using accident reconstruction software, Dr. King estimated that Appellee's car was traveling 12 mph when it struck Appellant's van. Dr. King opined that the force generated in the collision was approximately 1.5 Gs. Dr. King noted that 1G is exerted on the body when walking and that 2Gs are exerted on the body when running. Specifically, Dr. King testified that the force generated in the accident could not have caused the shoulder injuries that Appellant claimed to have suffered.
 {¶ 13} Dr. King's testimony was supported by the testimony of the surgeon who operated on Appellant. Dr. Robert Zanotti testified that Appellant suffered a SLAP lesion in his shoulder. Dr. Zanotti explained that a SLAP lesion consists of a tear of the muscles or tendons attaching the bicep to the shoulder. Dr. Zanotti testified that Appellant's SLAP lesion was a traumatic injury that could result in two ways, either through compression or distraction. Dr. Zanotti continued, noting that compression involved the application of force to the shoulder, while distraction was caused by force being exerted by the shoulder, such as heavy lifting or throwing or catching a heavy object. Neither of these methods for causing the injury, however, was present in the car accident. As noted above, Appellant testified that his shoulder did not strike any object during the accident. Furthermore, the distraction method for causing the injury is consistent with Appellee's theory that Appellant's injury was work-related. During his testimony, Appellant admitted that he often threw heavy garbage bags as a part of his job duties, an activity consistent with the distraction method for causing a SLAP lesion to the shoulder. In fact, during his treatment with Dr. Fagan, Appellant was repeatedly asked to stop throwing trash bags, but he continued to do so against the advice of his doctor. Finally, Dr. Zanotti indicated that the SLAP lesion had likely caused a partial tear in Appellant's rotator cuff, opining that friction caused by the loosened muscle in the joint caused the tear.
 {¶ 14} Accordingly, the trial court did not err in finding that the jury's verdict was not against the manifest weight of the evidence with respect to its award of zero damages as it relates to Appellant's shoulder injuries. The jury had before it competent credible evidence that Appellant's SLAP lesion shoulder injury was unrelated to the accident and had caused his torn rotator cuff. The jury, therefore, properly concluded that Appellee was not liable for the damages that stemmed from those shoulder injuries.
Neck Injury
 {¶ 15} "It is well settled that, in the context of a personal injury action, an injured party is entitled to recover the reasonable and necessary medical expenses arising from the injury." Gustin v.Chaney, 4th Dist. No. 05CA7, 2006-Ohio-1049, at ¶ 10, citing Wagner v.McDaniels (1984), 9 Ohio St.3d 184. Upon review, however, we cannot say that the trial court abused its discretion in finding that the jury properly awarded zero damages for Appellant's alleged neck injury.
 {¶ 16} At trial, Dr. Kathleen Fagan, Appellant's treating physician, testified that at his initial appointment, Appellant had no objectively verifiable injury to his neck. In contrast, Appellant did have a limited range of motion in his shoulder. Additionally, Dr. Fagan noticed that muscle spasms were present in Appellant's shoulder region. As noted above, however, substantial evidence was presented that this injury and the accompanying muscle spasms were unrelated to the accident involving Appellee. In contrast again, Dr. Fagan noted no spasms were present in Appellant's neck region. Appellant himself testified that any pain in his neck "just kind of evaporated" a few days after the accident. Appellant never received physical therapy for his neck injury. Furthermore, while Appellant presented medical bills for his initial appointment, there is no indication that those fees were not accrued due to his shoulder injury; an injury which the facts demonstrate was unrelated to the accident.
 {¶ 17} Additionally, the jury heard evidence from Dr. King that Appellant was likely not injured during the accident. Dr. King's testimony revealed that the force applied to Appellant's body during the accident was less than the force the body would endure by running. Dr. King opined that Appellant's head likely moved backward slightly on impact, but not sufficiently to cause injury which required medical care. Dr. King's testimony was directly supported by Appellant's own testimony which indicated that he did not even feel the impact of the accident and continued to work after the accident until his standard break period.
 {¶ 18} Finally, while both Dr. Fagan and Dr. Zanotti opined that Appellant's injuries resulted from the accident, both relied solely upon Appellant's subjective reports to reach such a conclusion. Both noted that Appellant's injuries must have been caused by the accident because Appellant had not previously complained of the injuries.
 {¶ 19} Accordingly, the jury heard evidence that Appellant had no objectively verifiable pain in his neck. In a similar case, Seymour v.Pierson, 5th Dist. No. 2005A00218, 2006-Ohio-961, our sister court affirmed a jury award of zero damages. In Pierson, the court found that the plaintiff may have been less than forthright about the pain she experienced as a result of her injuries and that the primary injury which she claimed persisted for more than one year was not objectively verifiable, "but was based on appellant's subjective complaints." Id. at ¶ 52.
 {¶ 20} Additionally, through Dr. King and the cross-examination of Appellant, Appellee placed the necessity of treatment for Appellant's neck injury directly at issue. "In general, Ohio courts have held that a trial court must admit proffered medical bills and that the defense is then free to rebut the prima-facie evidence of necessity and reasonableness." Robinson v. Bates, 160 Ohio App.3d 668, 2005-Ohio-1879, at ¶ 27. As noted above, Appellee presented substantial evidence that Appellant's alleged neck injury did not require medical treatment. Accordingly, Appellee rebutted the presumption created by Appellant's medical bills. As such, the jury was within its right to refuse to award Appellant the cost of his medical bills. See Baker v. Dorion,155 Ohio App.3d 560, 2003-Ohio-6834, at ¶ 18. Like the instant case,Baker involved a minor automobile accident. Therein, the jury awarded zero damages and the appellate court affirmed the denial of a grant of a new trial on the basis that the jury heard evidence of the minor nature of the accident and evidence that the plaintiff suffered from similar injuries prior to the accident.
Back Injury
 {¶ 21} During his testimony, Appellant indicated that he had previously experienced back pain as a result of his job as a laborer. Specifically, Appellant testified that jumping on and off of a garbage truck had previously injured his back. In addition, Appellant indicated that his work required him to perform many jobs which could injure his back, including shoveling, digging, and throwing heavy trash bags. Both Dr. King and Dr. Zanotti testified that Appellant's activities as a laborer could have caused the injuries he complained of, including his back injury. Furthermore, like his neck injury, his medical records indicate no objective signs of back injury. Accordingly, the jury had before it competent credible evidence that Appellant's alleged back injury could have been caused by an alternative source. The jury, therefore, was within its right to conclude from the evidence that Appellant's alleged back injury was not the result of the minor accident with Appellee. The trial court, therefore, did not abuse its discretion in denying Appellant's motion for a new trial
Conclusion
 {¶ 22} None of the cases relied upon by Appellant compel reversal. Appellant is correct in his assertion that a jury must award damages for pain and suffering when evidence is presented to support that award. As noted above, however, Appellee presented evidence that no pain and suffering would have resulted from such a minor accident. Accordingly, Appellant's reliance upon such case law is misplaced.
 {¶ 23} The jury had before it competent credible evidence that the treatment sought by Appellant for his neck injury was not reasonable and necessary. Specifically, Appellant's complaint of a neck injury was not objectively verifiable. Appellant admitted that he felt nothing at the time of impact and continued to work thereafter. Appellant further admitted that the pain he felt in his neck resolved itself in a few days without the aid of physical therapy. Simply stated, not every injury is compensable in tort. Furthermore, Appellee presented ample evidence that Appellant's alleged back and shoulder injuries were not the result of the accident involving Appellee, i.e., that both injuries resulted from Appellant's daily activities as a laborer. As such, we cannot say that the trial court abused it discretion in finding that the jury's award of zero damages was not against the manifest weight of the evidence. Appellant's sole assignment of error lacks merit.
 III {¶ 24} Appellant's sole assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
BOYLE, J. CONCURS