DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant, James Michael Petryszak, appeals from the trial court's denial of his motion for a new trial in the Wayne County Court of Common Pleas. This Court affirms.
 I {¶ 2} On December 25, 2003, Petryszak and his younger brother, Michael, were involved in a car accident. As Michael maneuvered his vehicle towards a bend in the road, an oncoming vehicle crossed over the center line and struck Michael's vehicle head on. Petryszak, Michael's passenger, remained in his seat after the collision. His parents, who had been following in the car behind, ran to the vehicle to check on their sons. Petryszak informed his mother, Cynthia, that his chest hurt. Cynthia observed a purple mark on Petryszak's chest where his seatbelt had restrained him during the collision. Subsequently, an ambulance took both Petryszak and his brother to Akron General Hospital. *Page 2 
 {¶ 3} Doctors took x-rays of Petryszak at the hospital and gave him pain medication before discharging him. Petryszak vomited at the hospital and after he returned home. Later that night, his continued vomiting and pain level caused his parents to take him to Dunlap Hospital where doctors performed additional x-rays and gave him more pain medication. Over the next two years, Petryszak met with several doctors regarding his continued back pain.
 {¶ 4} On November 22, 2005, Petryszak filed suit against Ryan R. Greegor, the driver of the other vehicle involved in his December 25, 2003 collision. Petryszak also named his own insurance company and Greegor's insurance company in the law suit, but later dismissed his claims against the two companies. The matter proceeded to a jury trial on September 10, 2007, ending in a favorable judgment for Petryszak in the amount of $2,500. On September 21, 2007, Petryszak filed a motion for a new trial pursuant to Civ. R. 59(A)(4) and (A)(6). The trial court denied the motion on September 26, 2007.
 {¶ 5} On October 26, 2007, Petryszak filed his notice of appeal. Petryszak's appeal is now before this Court and raises one assignment of error for our review.
 II Assignment of Error "THE JUDGMENT OF THE TRIAL COURT ENTERED ON THE VERDICT OF THE JURY SHOULD BE REVERSED AND SET ASIDE FOR THE REASON THAT THE AMOUNT OF THE DAMAGE AWARD WAS INADEQUATE AND MANIFESTLY AGAINST THE WEIGHT OF THE EVIDENCE."
 {¶ 6} In his sole assignment of error, Petryszak argues that the trial court erred in failing to grant his motion for a new trial and to set aside the jury's verdict. Specifically, he argues that the jury's damage award was grossly inadequate in comparison to the losses that he sustained and proved at trial. We disagree. *Page 3 
 {¶ 7} "Upon a timely motion, the trial court may grant a new trial when a jury has awarded `[e]xcessive or inadequate damages, appearing to have been given under the influence of passion or prejudice' or when `[t]he judgment is not sustained by the weight of the evidence.'"Dyson v. V and V Appliance Parts, Inc., 9th Dist. No. 23661,2008-Ohio-782, at ¶ 6, quoting Civ. R. 59(A)(4), (6). In reviewing an appeal from a denial of a motion for new trial on the foregoing bases, however, this Court "does not directly review whether the judgment was against the manifest weight of the evidence." Snyder v. Singer (May 17, 2000), 9th Dist. No. 99CA0020, citing Malone v. Courtyard by MarriotL.P. (1996), 74 Ohio St.3d 440, 448. Rather, we review a trial court's decision to grant or deny a new trial for an abuse of discretion and limit our review to determining "whether a manifest injustice has occurred." Dyson at ¶ 7. Abuse of discretion requires more than simply an error in judgment; it implies unreasonable, arbitrary, or unconscionable conduct by the court. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 8} "[T]he size of a verdict, without more, is insufficient to prove passion or prejudice." Bradley v. Cage (Feb. 27, 2002), 9th Dist. No. 20713, at *3, quoting Weidner v. Blazic (1994), 98 Ohio App.3d 321,334-35. A trial judge should "abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result." Bland v. Graves (1993), 85 Ohio App.3d 644, 651. "[I]t is the function of the jury to assess the damages, and generally, it is not for a trial or appellate court to substitute its judgment for that of the trier-of fact." Brown v. Mariano, 9th Dist. No. 05CA008820,2006-Ohio-6671, at ¶ 7, quoting Betz v. Timken Mercy Med. Ctr. (1994),96 Ohio App.3d 211, 218. "Where a verdict is supported by competent substantial and apparently credible evidence, a motion for a new trial will be denied." Brown at ¶ 6. *Page 4 
 {¶ 9} Petryszak argues that the jury's verdict was inadequate and manifestly against the weight of the evidence because his out-of-pocket medical expenses alone amounted to $3,600; his lost earnings totaled $2,900; and the jury declined to award him any damages for pain and suffering. He further argues that the expert testimony he offered during trial established that the December 25, 2003 collision was the source of his back injury, which caused all of the aforementioned losses.
 {¶ 10} Petryszak's father, James Petryszak, testified that he compiled several spreadsheets on which he calculated all of his son's medical expenses. The expenses spanned from the time of Petryszak's injury in December 2003 through September 2006 and encompassed expenses ranging from medical tests, such as x-rays, to therapy sessions for Petryszak's depression. On cross-examination, however, James admitted that his calculations included all of the expenses that he believed related back to Petryszak's car accident injury. Thus, James subjectively chose which expenses to include in his spreadsheet based on his personal belief that they were attributable to the accident. He further admitted that his son did not have any outstanding balance for medical expenses because all of his expenses were paid prior to trial. Accordingly, it was unclear exactly what medical expenses Petryszak accrued and owed as a result of the accident.
 {¶ 11} Petryszak's mother, Cynthia, testified that her son never experienced any back problems before his car accident with Greegor. She claimed that Petryszak might have suffered only sporadic muscle soreness as a result of his job, which involved lifting wood for a furniture business. Yet, the following exchange occurred on cross-examination:
 "[COUNSEL]: You're not aware that [Petryszak] ha[d] a severe thoracic pain and x-ray back in 2001?
 "[CYNTHIA]: I know he had some muscle aches and pains after [a] seizure. *Page 5 
"[COUNSEL]: And then in 2003 the same year this accident in February that he was treated for complaints in his back for two to three years off and on after lifting wood?
 "[CYNTHIA]: Well, just, yeah, whenever he would lift wood he might say he had sore muscles.
 "[COUNSEL]: Well, * * * complaints and spasm[s] in his abdomen and back for two to three years off and on after lifting wood. You would not consider that a back problem?
 "[CYNTHIA]: No, I would not.
 "[COUNSEL]: Again, in June `03 back pain off and on continues to have it?
 "[CYNTHIA]: I would say, yeah, that's muscle aches and pains."
Moreover, although Cynthia insisted that her son had told the doctors at both Akron General and Dunlap Hospital that he was having back pain during his emergency room visits following the accident, she admitted that neither hospital record from the visits contained any notation that Petryszak had back pain.
 {¶ 12} Petryszak testified that he has suffered from daily back pain ever since his car accident. He testified that his back had never bothered him before the accident. When confronted with his medical records from two to three years prior that indicated that he had suffered from back pain, Petryszak stated that he did not remember any such pain and that the reports were wrong. Petryszak could not recall exactly how long he waited to return to work after his accident, but he thought that he was out of work "for about three months." He specifically denied returning to work within one month of the accident.
 {¶ 13} Dr. Doug Yeakel testified that he initially met with Petryszak on January 9, 2004. According to Dr. Yeakel, Petryszak's initial exam showed some discomfort in his mid-thoracic spine area, but Petryszak's subsequent CAT scan was negative for any spinal injuries. Dr. Yeakel further testified that he had a follow-up exam with Petryszak on February 20, 2004 and *Page 6 
that Petryszak had reported that "he had very little discomfort and [had] been active and working since [he] saw him last." Although Dr. Yeakel initially opined that he believed the December 25, 2003 car accident was the source of Petryszak's back pain, Dr. Yeakel stated on cross-examination that Petryszak never informed him of any prior history of back pain. Dr. Yeakel testified that the "[p]rior history of a patient always affects [his] opinions."
 {¶ 14} Dr. Jeffrey Klein testified that he also met with Petryszak for the first time in January 2004. Much like Dr. Yeakel, Dr. Klein opined that Petryszak's car accident was the source of his back pain. Dr. Klein admitted, however, that he never personally reviewed any of Petryszak's x-ray films or the medical reports from his emergency room visits when he conducted his causation analysis.
 {¶ 15} The record includes Petryszak's individual income tax returns from 2003 through 2005. In 2003, Petryszak reported an income of $4,046. In 2004, he reported an income of $6,532, and in 2005, he reported an income of $8,621. Consequently, Petryszak's income increased each year in spite of his injuries. Even giving Petryszak the benefit of the doubt and averaging his salaries from these years, Petryszak only would have earned approximately $533 per month. This would amount to a salary loss of anywhere from $533 to $1,600 depending on whether a jury chose to believe that Petryszak returned to work three months from the date of his injury, as he claimed, or within one month of the date of his injury, as Dr. Yeakel claimed. Either figure, however, would amount to far less than the $2,900 salary loss Petryszak sought at trial.
 {¶ 16} The jury verdict form in Petryszak's case did not break down the award amounts by category, so it is impossible to tell what portion of the $2,500 award was meant to compensate Petryszak for his wage losses versus his medical expenses. It is also impossible to *Page 7 
determine whether the jury awarded any damages for pain and suffering. Even assuming that the jury did not award those damages, however, this Court has noted that "[e]vidence relative to pain and suffering in damage evaluations is within the province of the fact-finder."Dyson at ¶ 16, quoting Baughman v. Krebs (Dec. 10, 1998), 8th Dist. No. 73832, at *4. Based on our review of the record, it does not appear that the jury's award of $2,500 is against the manifest weight of the evidence. Petryszak's sole assignment of error lacks merit.
 III {¶ 17} Petryszak's sole assignment of error is overruled. The judgment of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30. *Page 8 
Costs taxed to Appellant.
 Slaby, J., Moore, P. J. concur. *Page 1