[Cite as *Waugh v. Chakonas*, 2011-Ohio-2764.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

FRANK A. WAUGH, et al.

    Appellants

    v.

ALICE L. CHAKONAS, et al.

    Appellees

C.A. Nos. 25417 & 25480

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No. CV 2009-02-1048

DECISION AND JOURNAL ENTRY

Dated: June 8, 2011

---

WHITMORE, Judge.

{¶1} Plaintiff-Appellants, Frank and Michelle Waugh ("the Waughs"), appeal from the judgment of the Summit County Court of Common Pleas, dismissing their claims against Defendant-Appellee, Alice Chakonas. This Court affirms.

I

{¶2} On February 19, 2007, Frank Waugh was involved in an automobile collision with another driver, Chakonas, after she failed to yield at a stop sign. Waugh indicated at the scene of the collision that he did not need medical attention, but decided to go to the emergency room several hours later due to muscle stiffness and a headache. After x-rays and a CT scan were performed, Waugh was discharged and told to follow up with his primary-care physician, Dr. Matthew Finneran. Waugh visited Dr. Finneran eight days later and began a course of treatment, involving pain medication and physical therapy. By the end of May, Waugh reported

to his physical therapist that he was ninety-percent improved and had "returned to all normal activities of daily living with only minimal difficulty."

{¶3}    After several months, Waugh gradually began to experience painful symptoms again and scheduled an appointment with Dr. Finneran.  Waugh was later referred to a neurosurgeon, Dr. Ghassan Khayyat, who diagnosed him as having a herniated disc between his sixth and seventh vertebrae.  Waugh had surgery on March 19, 2008, during which Dr. Khayyat removed Waugh's herniated disc and fused his sixth and seventh vertebrae.

{¶4}    On February 6, 2009, the Waughs brought a personal injury and loss of consortium suit against Chakonas.  Chakonas ultimately stipulated that she was at fault for the collision, but denied that she was the proximate cause of the Waughs' injuries.  The matter proceeded to a jury trial, the result of which was a verdict in Chakonas' favor on the basis of proximate cause.  Based on the jury's verdict, the trial court dismissed the action.

{¶5}    On May 10, 2010, the Waughs filed a motion for judgment notwithstanding the verdict ("JNOV") or, alternatively, a new trial.  On June 7, 2010, the trial court denied their motion.  The Waughs now appeal from the trial court's judgment and raise two assignments of error for our review.

II

Assignment of Error Number One

"THE TRIAL COURT ERRED IN DENYING PLAINTIFFS' MOTION FOR DIRECTED VERDICT PURSUANT TO OHIO CIV. R. 50(A)(4) AND LATER, PLAINTIFFS' MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT BECAUSE BASED UPON THE EVIDENCE, REASONABLE MINDS COULD COME TO BUT ONE CONCLUSION – THAT MS. CHAKONAS WAS THE PROXIMATE [CAUSE] OF INJURY AND DAMAGES TO APPELLANT, FRANK WAUGH."

{¶6} In their first assignment of error, the Waughs argue that the trial court erred by denying their motions for a directed verdict and JNOV. They argue that, viewing the evidence in a light most favorable to Chakonas, reasonable minds could only conclude that she was the proximate cause of Frank Waugh's injuries and resulting damages.

{¶7} This Court has held that:

"An appellate court reviews a trial court's ruling on a motion for a directed verdict de novo, as it presents an appellate court with a question of law. A motion for a directed verdict assesses the sufficiency of the evidence, not the weight of the evidence or the credibility of the witnesses." (Internal citations omitted.) *Jarvis v. Stone*, 9th Dist. No. 23904, 2008-Ohio-3313, at ¶7. See, also, Civ.R. 50(A).

After a court enters judgment on a jury's verdict, a party may file a JNOV to have the judgment set aside on grounds other than the weight of the evidence. See Civ.R. 50(B). As with an appeal from a court's ruling on a directed verdict, this Court reviews a trial court's grant or denial of a JNOV de novo. *Williams v. Spitzer Auto World Amherst, Inc.*, 9th Dist. No. 07CA009098, 2008-Ohio-1467, at ¶9. "JNOV is proper if upon viewing the evidence in a light most favorable to the non-moving party and presuming any doubt to favor the nonmoving party reasonable minds could come to but one conclusion, that being in favor of the moving party." *Williams* at ¶9, citing Civ.R. 50(B). If reasonable minds could reach different conclusions, the motion must be denied. *Garcea v. Woodhull*, 9th Dist. No. 01CA0069, 2002-Ohio-2437, at ¶10.

{¶8} "When alleging a negligence claim, a plaintiff must present evidence establishing that the defendant owed plaintiff a duty of care, the defendant subsequently breached the duty, and the breach was the proximate cause of plaintiff's injury." *Sendejaz v. WalMart Stores, Inc.*, 9th Dist. No. 21603, 2003-Ohio-7196, at ¶6. "The 'proximate cause' of a result is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened." *Bell v. Babcock & Wilcox Co.* (Sept. 1, 1993), 9th Dist. No. 15887, at *2,

quoting *Piqua v. Morris* (1918), 98 Ohio St. 42, paragraph one of the syllabus. In the absence of "circumstances [that] clearly indicate an obvious cause and effect relationship," "the issue of proximate cause is ordinarily one for determination by the jury." *Ornella v. Robertson* (1968), 14 Ohio St.2d 144, 151.

{¶9} Initially, we address a contention that the Waughs raise throughout their brief. The Waughs argue that the verdict is unsustainable because Chakonas' counsel conceded that Chakonas' negligence caused at least some of Waugh's injuries/damages. According to the Waughs, the only issue below was the extent of Waugh's injuries and recoverable damages. It was not an option, therefore, for the jury to conclude that Chakonas did not proximately cause any damages.

{¶10} The record reflects that Chakonas admitted fault for the collision with Waugh, but never conceded proximate cause as to his injuries. The attorneys informed the trial court before the trial began that the triable issues were "going to be the determination of whether or not *** Waugh was injured in the motor vehicle collision and the nature and extent and value of those injuries[.]" The court then reiterated that the issues for trial would be "[p]roximate cause *and then* the extent and the value of any injuries[.]" (Emphasis added.) Moreover, while fully recognizing that opening statements are not evidence, Chakonas' counsel informed the jury during his opening statement that the parties were disagreeing "as to what injuries, *if any*, were caused by this accident[.]" (Emphasis added.) He also framed the issue for the jury as, "number one, was Mr. Waugh injured in this accident?" To the extent that Chakonas' counsel referenced Waugh as having sustained minor injuries, this Court has recognized that defense counsel does not concede the issue of proximate cause merely by advocating that, if there was proximate cause, the damages were minimal. See *Prunty v. Standen* (May 4, 1994), 9th Dist. No. 2263-M,

at *2. Further, as discussed below, the jury instructions and interrogatories placed the issue of proximate cause squarely before the jury. Any contention on the part of the Waughs that the verdict is in error because Chakonas conceded proximate cause is meritless.

{¶11} Frank Waugh admitted that he declined medical treatment at the scene of the collision and informed the officers who responded to the scene that he was not injured. He testified that he went to the emergency room several hours later due to muscle stiffness and a headache, but the x-rays and CT scan that Waugh received there were negative for any trauma. Waugh continued going to work, saw his personal physician eight days later, and began physical therapy. Almost eight weeks later, Waugh received an MRI, which showed a disc herniation between the sixth and seventh cervical vertebrae. He testified that he ultimately had cervical spine surgery on March 19, 2008.

{¶12} Dr. Ghassan Khayyat, the neurosurgeon who performed Waugh's March 19, 2008 surgery, testified on Waugh's behalf by way of a videotaped deposition. Dr. Khayyat testified that the first time that he met Waugh and examined him was January 29, 2008, almost one year after the collision. He testified that he reviewed two MRIs, one from March 2007 and the other from December 2007, both of which displayed a herniated disc and pinched nerve in Waugh's cervical spine. Dr. Khayyat responded affirmatively when asked if he had an opinion, "to a reasonable degree of medical certainty, as to what injury Frank Waugh sustained as a result of the motor vehicle collision." Dr. Khayyat opined that the collision caused the pinched nerve and disc herniation that he later treated. He further opined that the collision caused all of the treatment and surgery that Waugh received.

{¶13} Upon cross-examination, Dr. Khayyat admitted that it would be possible for his medical conclusions to be inaccurate if a patient provided him with an inaccurate history. He

then testified that Waugh told him the collision resulted in "discomfort in [Waugh's] neck immediately after with [a] burning sensation over his shoulder[.]" The history that Waugh gave Dr. Khayyat, therefore, differed from his trial testimony in which he stated that he did not experience any symptoms immediately after the collision. Moreover, Dr. Khayyat testified that he never reviewed Waugh's emergency room records (other than the x-rays and CT scan), never reviewed Waugh's physical therapy records, and did not know whether Waugh's job involved any type of strenuous labor. Dr. Khayyat admitted that disc herniations can be caused by degenerative issues as well as repetitive trauma, such as wear and tear from a strenuous job. Dr. Khayyat also agreed that Waugh's MRI scans displayed a mild degenerative issue with his cervical discs. Further, Waugh later testified that his job at Quality Synthetic Rubber, which he had held for almost eleven years at the time of the accident, was a physically demanding one.

{¶14} The Waughs argue that they satisfied their burden on the issue of proximate cause at trial through Dr. Khayyat's testimony and that Chakonas never negated that testimony. They maintain that a trier of fact cannot ignore uncontroverted expert testimony and rely upon *McWreath v. Ross*, 11th Dist. No. 2008-T-0035, 2008-Ohio-5855, to argue that they were entitled to judgment as a matter of law on the issue of proximate cause. The Waughs acknowledge that a defendant may negate a plaintiff's prima facie case through cross-examination, see *Stinson v. England* (1994), 69 Ohio St.3d 451, 455-56, but argue that their case is analogous to *McWreath*.

{¶15} While posited as a challenge to the trial court's failure to grant a directed verdict or JNOV, the crux of the Waughs' argument in their first assignment of error actually sounds in weight rather than sufficiency. Their reliance upon *McWreath* demonstrates the point. In *McWreath*, the Eleventh District upheld a trial court's decision to reject the jury's verdict and to

enter judgment in the plaintiff's favor after the plaintiff's expert testified that a collision with the defendant caused plaintiff's injuries. *McWreath* at ¶88-89. Because the plaintiff's expert only ever admitted on cross-examination that it was possible for the plaintiff's injuries to have stemmed from another cause, the Eleventh District reasoned, that acknowledgment alone would not negate the expert's ultimate conclusion that the collision caused plaintiff's injuries. Id. at ¶81-84 (holding that plaintiff's expert's testimony was uncontroverted because the concessions he made on cross-examination were expressed only in terms of possibility). The Waughs argue that *McWreath* is a basis for reversal in this case. Yet, *McWreath* was an appeal from the denial of a motion for a new trial based on the weight of the evidence. Id. at ¶58-66. It was not solely a question of sufficiency. Moreover, the result depended upon a concession from the defense counsel that, as discussed supra, does not exist in this case. Id. at ¶86-88 (noting that, even if the jury disbelieved the expert's conclusion that all of the plaintiff's injuries stemmed from the collision, the judgment was in error because defense counsel had conceded that it proximately caused at least some of plaintiff's medical expenses).

{¶16} Absent evidence of an obvious cause and effect relationship, "the issue of proximate cause is ordinarily one for determination by the jury." *Ornella*, 14 Ohio St.2d at 151. We are unwilling to hold that the evidence in this case demonstrated a causal relationship that was so obvious in nature that the court erred as a matter of law by submitting the proximate cause issue to the jury. Neither driver indicated that they were injured at the scene of the collision and Waugh's x-rays and CT scan from later the same day were negative for trauma. Waugh did not have an MRI performed until almost eight weeks after the collision and, in the meantime, he continued going to work. Almost one year elapsed before Dr. Khayyat met Waugh and examined him for the first time. He was the only physician to testify. Moreover, the cross-

examination of Dr. Khayyat identified several important items that, arguably, detracted from the accuracy of his conclusions. Viewing all of the evidence in a light most favorable to Chakonas and presuming any doubt in her favor, we cannot say that reasonable minds could come to but one conclusion on the issue of proximate cause. See *Williams* at ¶9. See, also, *Jones v. Warren* (June 17, 1992), 9th Dist. No. 2054, at *2 (upholding trial court's denial of a JNOV where "[f]ollowing her accident with [the defendant], [the plaintiff] did not complain of any injury, did not seek medical treatment, and continued with her normal activities."). As such, the trial court did not err by refusing to grant the Waughs' motions for directed verdict and JNOV. The Waughs' first assignment of error is overruled.

Assignment of Error Number Two

> "THE TRIAL COURT ABUSED ITS DISCRETION BY NOT FINDING THAT THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE: (1) THE JURY'S VERDICT THAT MS. CHAKONAS' STIPULATED LIABILITY WAS NOT THE PROXIMATE CAUSE OF MR. WAUGH'S INJURY AND DAMAGES WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[; AND] (2) THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING MR. AND MRS. WAUGH'S MOTION FOR NEW TRIAL PURSUANT TO OHIO CIV. R. 59(A)(6)."

{¶17} In their second assignment of error, the Waughs argue that the trial court erred by denying their motion for a new trial because the jury's verdict is against the manifest weight of the evidence. Specifically, they argue that they proved proximate cause by a preponderance of the evidence.

{¶18} "Depending upon the basis of the motion for a new trial, this Court will review a trial court's decision to grant or deny the motion under either a de novo or an abuse of discretion standard of review." *Calame v. Treece*, 9th Dist. No. 07CA0073, 2008-Ohio-4997, at ¶13, citing *Rohde v. Farmer* (1970), 23 Ohio St.2d 82, paragraphs one and two of the syllabus. "[W]hen the basis of the motion involves a question of law, the de novo standard of review applies, and when

the basis of the motion involves the determination of an issue left to the trial court's discretion, the abuse of discretion standard applies." *Dragway 42, L.L.C. v. Kokosing Constr. Co., Inc.*, 9th Dist. No. 09CA0073, 2010-Ohio-4657, at ¶32. This Court has held that an abuse of discretion standard of review applies in an appeal from the denial of a motion for a new trial under Civ.R. 59(A)(6). *Griffith v. Veale*, 9th Dist. No. 24036, 2008-Ohio-5704, at ¶7.

{¶19} Civ.R. 59(A)(6) allows a party to seek a new trial on the basis that "[t]he judgment is not sustained by the weight of the evidence[.]"

> "When considering a Civ.R. 59(A)(6) motion for a new trial, a trial court must weigh the evidence and pass on the credibility of the witnesses. [Yet], the trial court assesses the weight and credibility in a more limited sense than would a jury; the court is to determine, in light of its broad discretion, whether a manifest injustice has occurred." (Internal citations omitted.) *Brown v. Mariano*, 9th Dist. No. 05CA008820, 2006-Ohio-6671, at ¶5.

"Where a verdict is supported by competent substantial and apparently credible evidence, a motion for a new trial will be denied." *Petryszak v. Greegor*, 9th Dist. No. 07CA0076, 2008-Ohio-4776, at ¶8, quoting *Brown* at ¶6.

{¶20} The Waughs argue that the trial court abused its discretion by failing to grant their motion for a new trial because defense counsel conceded that Chakonas' negligence caused some injury to Waugh, "Chakonas failed to present any evidence that her negligence did not cause Mr. Waugh['s injuries,]" and the uncontested evidence could only support an award of some amount in the Waughs' favor. We begin once again by dispelling the Waughs' erroneous assertions; namely, that defense counsel conceded the issue of proximate cause or that Chakonas bore the burden of presenting evidence at trial.

{¶21} Virtually all of the cases upon which the Waughs rely in support of their argument involve a concession of some kind on the part of defense counsel on the issue of proximate cause. See, e.g., *Hoschar v. Welton*, 7th Dist. No. 06-CO-20, 2007-Ohio-7196, at ¶1 (agreeing

the appellant was entitled to a new trial where "Appellee did not *** dispute or take issue with Appellant's emergency medical treatment, diagnoses, or transport arising from th[e] collision"); *Lovett v. Wenrich*, 2d Dist. No. 19497, 2003-Ohio-4587, at ¶9 ("At trial, the jury was instructed that Wenrich admitted negligence and that Lovett had suffered some injury as a result of that negligence."). The others are factually distinguishable. See, e.g., *Dalton v. Young*, 5th Dist. No. 2005CA00229, 2006-Ohio-2428, at ¶10 (involving collision where plaintiff indicated having neck pain and a headache immediately after impact); *Walker v. Holland* (1997), 117 Ohio App.3d 775, 777 (involving collision where plaintiff was transported from the scene by ambulance, complaining of pelvic cramping and neck soreness). The case at hand does not involve an instance where the defense counsel conceded the issue of proximate cause; the plaintiff pursued, in the alternative, a dual causation theory at trial; or the plaintiff experienced an immediate injury at the scene of the collision requiring treatment. The jury was instructed that the Waughs had to prove Chakonas' negligence was the proximate cause of Waugh's injuries. Moreover, the interrogatory presented to the jury specifically asked the jury to indicate a "yes" or "no" response to the following question: "Do you find, by the preponderance of the evidence, that the automobile collision caused by the defendant was the proximate cause of damages to the plaintiff, Frank Waugh?" Thus, the issue of proximate cause was contested at trial and placed squarely before the jury for their determination.

**{¶22}** It is also axiomatic that, as the plaintiffs, the Waughs carried the burden of proof at trial. Chakonas was not required to present evidence because the negligence claim was not hers to prove. Rather, she could rely upon cross-examination to negate the evidence that the Waughs presented. See *Stinson*, 69 Ohio St.3d at 455-56. The only issue then is whether the

trial court, in exercising its sound discretion, wrongly concluded that the jury's verdict was supported by the weight of the evidence.

{¶23} Much of the Waughs' argument as to why the jury reached the wrong result stems from the jury's rejection of the Waughs' expert's testimony. Yet, "[a] jury *** is free to accept or reject any or all of the testimony of any witness, including an expert witness." *Eck v. State Farm Mutual Ins. Co.* (June 19, 1996), 9th Dist. No. 95CA006238, at *2. The jurors here were instructed that they could determine what weight to lend to Dr. Khayyat's testimony and that they were "not obligated to believe an expert merely because he or she [was] one." With that in mind, we turn to the evidence presented at trial.

{¶24} As previously noted, Waugh declined medical treatment at the scene of the collision and told the police that he was uninjured even though he later told Dr. Khayyat that he immediately experienced symptoms. Waugh did not receive an MRI until approximately eight weeks later, during which time he continued working. Waugh also testified that his job, at times, involved strenuous activity, but claimed that he kept going to work despite the pain because he could not afford to take time off. Even so, Waugh admitted on cross-examination that he sporadically took several vacation and personal days in the period of time following the collision, including a full week of vacation immediately before he left Quality Synthetic Rubber to join a different company.

{¶25} For his part, Dr. Khayyat testified that Waugh's cervical disc herniation, his surgery, and all the treatment he received related to that injury stemmed from his collision with Chakonas. He also testified, however, that he did not examine Waugh until almost one year after the accident; he did not review Waugh's emergency room records, his primary care physician's records, or his physical therapy records; and he based his medical conclusions upon a history that

included Waugh's statement that he experienced immediate discomfort in his neck after the impact from the collision. He also was unaware of any of the details about the collision, including whether Waugh's airbag deployed, how fast he was going when the accident occurred, whether his body came into contact with any part of the vehicle, or whether he lost consciousness. Further, Dr. Khayyat admitted that he did not know whether Waugh's job required strenuous activity, despite his acknowledgment that repetitive or strenuous activities can cause the type of herniation injury that Waugh sustained. The only other witnesses to testify at trial were Waugh's wife, who stated that Waugh never experienced any neck problems before the collision, and Waugh's friend, who also worked at Quality Synthetic Rubber but rarely saw Waugh there because they had different shifts.

**{¶26}** The trial court here fully recognized that the ultimate decision in this matter "turned on the jurors' evaluation of the credibility of the [Waughs'] witnesses and the expert witness." In exercising its discretion, the court concluded that it could not upset the jury's unanimous decision in Chakonas' favor, given that reasonable minds could differ as to the quality of the evidence presented. Accordingly, it denied the Waughs' motion for a new trial.

**{¶27}** We recognize the limitations of our review in this instance. Indeed, a reversal would require us to conclude, not only that a manifest injustice occurred, but that the trial court abused its discretion in failing to identify it. *Brown* at ¶5. Given that there were objectively discernable facts in the record that could bring the credibility of the witnesses into question, see *Dottavio v. Shepherd* (Dec. 1, 1999), 9th Dist. No. 98CA0042, at *2-3, and that the jury was in the best position to assess their credibility, this Court cannot conclude that the trial court abused its discretion by upholding the jury's verdict and denying the Waughs' motion for a new trial. Consequently, the Waughs' second assignment of error is overruled.

III

**{¶28}** The Waughs' assignments of error are overruled.  The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution.  A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run.  App.R. 22(E).  The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellants.

BETH WHITMORE
FOR THE COURT

DICKINSON, J.
<u>CONCURS, SAYING:</u>

**{¶29}** I write separately for the sole purpose of noting my understanding that, by relying on *Brown v. Mariano*, 9th Dist. No. 05CA008820, 2006-Ohio-6671, for the test a trial court applies in ruling on a motion for new trial under Rule 59(A)(6) of the Ohio Rules of Civil

Procedure, we have overruled this Court's opinion in *Griffith v. Veale*, 9th Dist. No. 24036, 2008-Ohio-5704, approving of a trial court's use of the "competent, credible evidence" test in ruling on a motion for new trial under Rule 59(A)(6). *Id.* at ¶7.


CARR, P. J.
CONCURS IN PART, AND DISSENTS IN PART, SAYING:

{¶30} Although I agree with the majority that it was within the province of the jury to reject the testimony of Waugh's expert that the collision was the cause of the herniated disk he developed several months later, I cannot agree that the jury was free to enter a judgment for Chakonas and not award Waugh any damages. At the very least, the jury should have awarded him the amount of the hospital emergency room bill because he had the right to seek an evaluation on the day of the accident. See *Turner v. Nationwide Ins. Co.*, 9th Dist. No. 05CA008853, 2006-Ohio-6063, at ¶23 (Carr, J., dissenting). I would sustain the second assignment of error and remand for a new trial.


APPEARANCES:

LYNN A. LAZZARO, LORI A. LUKA, and KATHRYN M. KRAMER, Attorneys at Law, for Appellants.

DONALD P. WILEY, and RALPH E. DUBLIKAR, Attorneys at Law, for Appellee.