[Cite as *Spade v. Taliwal*, 2013-Ohio-2177.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

DOUGLAS SPADE, Administrator of the
Estate of Rhonda S. Keene, Deceased

    Appellant

    v.

RAJIV V. TALIWAL, M.D., et al.

    Appellees

C.A. No.      26412

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2010 11 7427

DECISION AND JOURNAL ENTRY

Dated: May 29, 2013

BELFANCE, Presiding Judge.

{¶1}    Plaintiff-Appellant Douglas Spade, as the Administrator of the Estate of Rhonda S. Keene ("the estate"), appeals from the judgments of the Summit County Court of Common Pleas. For the reasons set forth below, we reverse and remand the matter for a new trial on the issue of damages.

I.

{¶2}    In October 2007, Defendant-Appellee Rajiv Taliwal, M.D. performed a microdiscectomy on Ms. Keene's lumbar spine. A microdiscectomy is a surgery that is done to alleviate pressure on spinal nerves caused by the herniation of a lumbar disc. The surgery is considered to be routine. By all accounts, the surgery resulted in no complications or side effects. In February 2008, Ms. Keene was to undergo a revision microdiscectomy to relieve pain she was experiencing from a recurrent herniation of the disc. Dr. Taliwal performed that operation on February 27, 2008, and it was expected that Ms. Keene would be released from the

hospital the next day. Unbeknownst to Dr. Taliwal, during the surgery Ms. Keene experienced a drop in blood pressure that was corrected by the nurse anesthetist via the administration of pressors. The surgery concluded at 1:58 p.m. Following the surgery, Ms. Keene was transported to recovery and shortly thereafter, at 2:10 p.m., suffered an extreme drop in blood pressure and increase in heart rate. At 2:13 p.m., Ms. Keene began to have difficulty breathing and required medical intervention to be stabilized. Dr. Taliwal was in the recovery area during this episode and dictated his operative report, which he finished at 2:17 p.m. Dr. Taliwal then left the area, reported to Ms. Keene's family, and went home around 2:30 to 2:45 p.m. At this time Ms. Keene's family was able to briefly visit Ms. Keene in the recovery area. Upon returning to the waiting area, the family waited for what seemed like hours for Ms. Keene to be transferred to a room. The family began to worry that something had gone wrong.

{¶3}     Within a few hours, Ms. Keene's condition began to decline ultimately leading to a cardiorespiratory collapse. The nurses informed the family that there was a serious problem and that they were trying to get the doctor back. Then, around 5:30 p.m., Dr. Taliwal was called and informed of the situation. He returned to the hospital and he and a general surgeon determined that Ms. Keene needed immediate surgery. They brought Ms. Keene into surgery while they waited for a vascular surgeon to arrive. A defect in Ms. Keene's aorta was discovered along with active bleeding. Due to calcification in her aorta, the defect could not be sutured, and the calcified portions were removed and a graft was put in. Ms. Keene survived the second surgery, but was taken to intensive care following the surgery. Around 4 a.m. the following day, Ms. Keene's blood pressure again began dropping precipitously. The family was informed that resuscitation efforts would not be successful. Ms. Keene passed away that morning. An autopsy was conducted on Ms. Keene and the cause of death was determined to be "complications of

massive intra-abdominal hemorrhage following perforation of the distal aorta during revision lumbar microdis[c]ectomy surgery." In other words, Ms. Keene suffered a hemorrhage due to a perforation in her aorta. The forensic pathologist who conducted the autopsy was able to track an abnormal opening in the front portion of the disc, through the disc space, through the other side and toward the incision site on Ms. Keene's back.

{¶4} The estate initially filed suit in Medina County. However, after a settlement was reached with all of the defendants except for Dr. Taliwal and his professional corporation, Northcoast Spine Center, Inc., the suit was dismissed without prejudice. The case was re-filed in Summit County on November 3, 2010, against Dr. Taliwal and Northcoast Spine Center, Inc. The complaint asserted claims for medical malpractice, wrongful death, and asserted that Civ.R. 10 was unconstitutional.[1] Prior to trial, the parties agreed that, should the estate prevail against Dr. Taliwal and Northcoast Spine Center, Inc., Dr. Taliwal and Northcoast Spine Center, Inc. could set-off any award by the amount of the prior settlement. The matter proceeded to a jury trial. The jury found in favor of the estate and awarded a total of $87,933.62 in compensatory damages. Because the jury's award was less than the prior settlement award, the verdict resulted in a finding that nothing was owed to the estate based on the instant suit. The estate filed a motion for a new trial with respect to damages, which was subsequently denied by the trial court. The estate has appealed the jury's damages award, raising two assignments of error for our review which will be addressed out of sequence to facilitate our review.

---

[1] The trial court dismissed the claim concerning the constitutionality of Civ.R. 10.

II.

ASSIGNMENT OF ERROR II

THE TRIAL JUDGE FURTHER ABUSED HER DISCRETION BY REFUSING TO FURNISH A CONCURRENT NEGLIGENCE CHARGE THAT WAS INDISPENS[A]BLE UNDER THE CIRCUMSTANCES.

{¶5}    The estate asserts in its second assignment of error that the trial court erred in failing to give an instruction on concurrent negligence.  We agree.

{¶6}    Civ.R. 51(A) states that:

At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. Copies shall be furnished to all other parties at the time of making the requests.  The court shall inform counsel of its proposed action on the requests prior to counsel's arguments to the jury and shall give the jury complete instructions after the arguments are completed.  The court also may give some or all of its instructions to the jury prior to counsel's arguments.  The court shall reduce its final instructions to writing or make an audio, electronic, or other recording of those instructions, provide at least one written copy or recording of those instructions to the jury for use during deliberations, and preserve those instructions for the record.

On appeal, a party may not assign as error the giving or the failure to give any instruction unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

{¶7}    In the instant matter, the estate submitted proposed jury instructions which included an instruction on concurrent but independent negligence.  The trial court declined to give the instruction stating that "I'm not going to instruct on that.  I think the issue in this case clearly is and should be focused on what role, if any, [D]octor Taliwal played in the operating room and/or PACU, and I think to put in what the plaintiff is requesting is going to confuse that issue.  Again, if you want to make an objection, note your objection on the record – [.]"  To which the estate's counsel replied "Yes."  Finally, after the trial court provided the jury with the instructions, the estate's counsel indicated that he "would object to the Court not giving the

concurrent tort feasor charge as submitted." In light of the foregoing, it appears that the estate preserved the issue for review. Further, Appellees do not assert that the estate failed to preserve this argument.

{¶8} "A trial court must give jury instructions that correctly and completely state the law." *Groob v. KeyBank*, 108 Ohio St.3d 348, 2006–Ohio–1189, ¶ 32. "Ordinarily requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction." (Internal quotations and citations omitted.) *Murphy v. Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 591 (1991). "[I]n order to demonstrate reversible error with respect to a trial court's refusal to give a proposed instruction, an appellant must demonstrate that, first, the trial court abused its discretion by failing to give the requested instruction, and second, that the appellant was prejudiced as a result." (Internal quotations and citations omitted.) *Van Scyoc v. Huba,* 9th Dist. No. 22637, 2005-Ohio-6322, ¶ 7.

{¶9} We note that the estate's proposed instruction mirrors the Ohio Jury Instruction on concurrent but independent negligence, *see* 4 *Ohio Jury Instructions,* CV Section 401.39 (2012), and that Appellees do not assert that the instruction is an incorrect statement of the law. "While the instructions found in the Ohio Jury Instructions are not mandatory, they are recommended instructions based primarily upon case law and statutes[.]" (Internal quotations and citation omitted.) *State v. Armstrong,* 9th Dist. No. 24479, 2009-Ohio-5941, ¶ 13.

{¶10} Under the circumstances of this particular case, we conclude that the trial court abused its discretion in failing to give the instruction and that such failure prejudiced the estate. The proposed instruction at issue stated, "If a person is injured by the negligence of two (or more) persons who act independently, and their acts combine to proximately cause injury, each

of the wrongdoers is liable to such person for the full amount of damage. The injured person may enforce his claim in an action against all jointly or any one of them individually."

{¶11} At several points in the trial, the jury was made aware that other entities and individuals had taken responsibility for Ms. Keene's injury. For instance in opening statements, the estate's counsel stated that "[t]his case is about accountability * * *. The PACU team, that is the recovery team, has already recognized their responsibility to the estate * * *." Also, Mr. Spade acknowledged during his testimony that a resolution had been reached between the estate and the PACU, the nurse anesthetist, and the anesthesiologist and that the estate received money based upon that resolution. During cross-examination of one of the estate's experts, defense counsel asked the expert if he was aware that "there was a resolution with the hospital and anesthesia people[.]" Finally, the issue came up during both sides' closing arguments. The estate's counsel noted on more than one occasion that the PACU team held itself accountable but Dr. Taliwal had not. The estate's counsel tried to inform the jury that it was not to speculate at the amount the PACU team settled for; however, objections to his comments were sustained. The estate's counsel did alert the jury that it was "to put the whole value of her life and not subtract anything or speculate, the whole value." Nonetheless, following the estate's counsel's comments, defense counsel made repeated references to the fact that the PACU team acknowledged responsibility and settled with the estate. Defense counsel also stated that

> [T]his is all about money, ladies and gentlemen. That is what this is about. This is about money, a lot of money. [The estate's counsel] are very experienced attorneys. They had a party in this case who accepted responsibility, who said they were responsible for what happened here and caused this harm. And * * * if you think they didn't settle for full value on this case, think again, because they did.

{¶12} The estate's counsel objected and the trial court ordered the jury to disregard the value of any other settlement and focus on whether Dr. Taliwal was negligent.

{¶13}  In addition, the jury was exposed to testimony indicating that multiple people, including those that had settled, were responsible for the care of Ms. Keene.  During cross-examination of Dr. Taliwal's expert, the expert testified that "the evaluation of the patient in the recovery room that is having persistent low blood pressure and elevated heart rate, * * * is a team approach, and * * * the anesthesiologist and the surgeon are both involved."  The expert went on to state that "it is important to have a stratified approach to patient care in the recovery room, and it is the anesthesiologist who is really in charge."  On direct examination, Dr. Taliwal testified that the different medical professionals have different medical roles.  He indicated that, "as the patient is coming out of anesthesia, and what we essentially at that point have done is turn the patient over to the anesthesiologist and PACU staff."  On cross-examination, Dr. Taliwal stated that he "was not made aware that [Ms. Keene] was unstable during that early post-operative period[]" and that, while Ms. Keene was in recovery, he left her in the care of the individuals charged with managing that area.

{¶14}  Thus, the jury was presented with the overall picture that the responsibility of treating and caring for Ms. Keene fell on numerous people, some of whom had already acknowledged responsibility for her injury and death, and had paid money to the estate.  In addition, the jury was improperly informed during closing argument that the other people involved had settled for full value, implying that there was no need for Ms. Keene to receive further compensation, or perhaps that, in the least, she was due less compensation than the entirety of her damages.  Moreover, it is arguable that the trial court's corrective instruction, while helpful, did not clearly clarify for the jury that, assuming it found Dr. Taliwal negligent, it was still required to award the full value of the damages.  The proposed jury instruction would have clarified this issue for the jury.  While the jury was instructed on negligence, and on the fact

that there can be more than one proximate cause, it was not instructed that, if it found Dr. Taliwal negligent, Dr. Taliwal was liable to the estate for the full value of the damages. The instruction by the trial court that, "[i]f you find for [the estate], you will decide * * * an amount of money that will reasonably compensate [the estate] * * * for [] damages resulting by reason of the injuries she sustained[,]" while helpful, did not inform the jury that the prior settlement should not impact in anyway the award of damages. This idea was particularly important in this case because the parties had already agreed that the Appellees could set-off any award by the amount of the prior settlement, and, thus, the jury was not aware that its award would never create a double recovery.

{¶15} Moreover, we are not persuaded by Appellees' argument that such an instruction was unwarranted because Appellees were the only defendants in the action and the jury was not presented with evidence of the negligence of other individuals. *See Vorum v. Gorman,* 97 Ohio App. 175, 182 (3d Dist.1953). However, clearly from the testimony and statements discussed above, the jury could reasonably infer that it was at least possible that other people were negligent in the care of Ms. Keene. We are also not persuaded by Appellees' argument that, because the jury found Appellees negligent, there can be no prejudice from the failure to give the instruction. *See* Civ.R. 61. The instruction deals not only with whether individuals are negligent, it deals with the issue of the award of damages as well. Thus, if the lack of the instruction prejudiced the estate as to the award of damages, we fail to see how the error can be harmless.

{¶16} In the instant matter, the jury awarded the estate a total award of $87,933.62. It awarded $11,311.67 for medical expenses, $0 for loss of services of Ms. Keene, $1,621.95 in funeral and burial expenses, $0 for Ms. Keene's pain and suffering, $50,000 for loss of society of

Ms. Keene, and $25,000 for mental anguish. Although it is possible to construct an argument that some of the jury's award represents a total damage award, we observe that there is no way to explain the jury's award of funeral and burial expenses, which totaled exactly half of the bill submitted into evidence. There was no other evidence presented concerning funeral and burial expenses, nor was there any argument that they should not be awarded. Thus, the jury's award of funeral and burial expenses is completely unsupported by the evidence. Awarding exactly half of the funeral and burial expenses provides circumstantial support for the notion that the jury's award represents only a portion of the damages that it believed the estate was entitled to recover.

{¶17} Given the impropriety of this award, it is very possible that other segments of the damages award represent only a portion of what the jury viewed as the entirety of the damages. In summary, we conclude that, if the jury had been instructed on concurrent but independent negligence, such that it was aware that it was to award the full value of damages, the damages award would likely be different. Thus, we sustain the estate's second assignment of error and remand the matter for a new trial solely on the issue of damages.

ASSIGNMENT OF ERROR I

BECAUSE THE JURORS HAD COMMITTED AN OBVIOUS ERROR IN THE CALCULATION OF THE AWARD THAT WAS ISSUED TO PLAINTIFF-APPELLANT, THE TRIAL JUDGE ABUSED HER DISCRETION BY REFUSING TO GRANT A NEW TRIAL ON DAMAGES.

{¶18} The estate asserts in its first assignment of error that the trial court erred in denying its motion for a new trial on damages. Because our resolution of the estate's second assignment of error renders this argument moot, we decline to address it. *See* App.R. 12(A)(1)(c).

III.

{¶19} In light of the foregoing, we sustain the estate's second assignment of error, reverse the damages award, and remand the matter for a new trial as to the issue of damages only.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
CONCURS.

HENSAL, J.
DISSENTING.

{¶20} I respectfully dissent. I do not believe that the trial court abused its discretion in excluding the proposed jury instruction or in denying the Estate's motion for a new trial. I would affirm the judgment of the trial court.

{¶21} The Estate argues that the trial court's failure to allow it to discuss the set-off agreement between the parties for the first time at closing argument, coupled with comments made by Dr. Taliwal's counsel, led the jury to miscalculate damages. The Estate's theory is that these events led the jury to believe that the Estate would receive a double recovery given the fact that it had already settled with the other medical professionals involved in Ms. Keene's care. The Estate further argues that its proposed concurrent negligence jury instruction would have clarified to the jury that there was no risk of double recovery.

{¶22} I disagree with the majority's opinion that the trial court erred by excluding the Estate's proposed concurrent negligence charge. In ruling on the proposed instruction, the court clearly stated that the trial was confined to the narrow issue of Dr. Taliwal's conduct in the treatment of Ms. Keene. The court reasoned that the insinuation of any other medical professional's negligent conduct would only serve to confuse the jury. I respectfully decline to find that the proposed jury instruction would have clarified matters related to the possibility of double recovery.

{¶23} I agree with the majority that a trial court's decision regarding what instructions are given to the jury is reviewed under an abuse of discretion standard. *Van Scyoc v. Huba*, 9th Dist. No. 22637, 2005-Ohio-6322, ¶ 6. However, I disagree with the conclusion that the trial court acted in an "unreasonable, arbitrary or unconscionable" manner when it denied the requested instruction. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). This is due, in

part, to the fact that this Court is not to substitute its judgment for that of the trial court. *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

{¶24} The proposed jury instruction may have introduced an element of joint causation in a case involving only one defendant. Further, it may not have cured any misconception regarding the possibility of double recovery. As this Court need not determine in the first instance that the inclusion of the instruction would have cured the error, we also, therefore, need not determine that the failure to do so caused any alleged erroneous finding by the jury.

{¶25} There is competent, credible evidence in the record to support a finding that no error occurred, as well as a finding that the requested instruction would fail to cure any potential error. I would, therefore, refrain from any further analysis by this Court regarding whether the jury clearly lost its way. The Estate has not requested such an analysis on appeal. The Estate has not assigned as error on appeal that the verdict is against the manifest weight of the evidence. Pursuant to Appellate Rule 12(A)(2), this Court is not required to address issues that are not argued separately as assignments of error as required by Appellate Rule 16. *State v. Fiscus*, 9th Dist. No. 12CA0041, 2013-Ohio-1124, ¶ 21.

{¶26} I would also find that the trial court did not abuse its discretion in denying the Estate's motion for a new trial.

{¶27} "[W]hen the basis of the [new trial] motion involves a question of law, the de novo standard of review applies, and when the basis of the motion involves the determination of an issue left to the trial court's discretion, the abuse of discretion standard applies." *Dragway 42, L.L.C. v. Kokosing Constr. Co., Inc.*, 9th Dist. No. 09CA0073, 2010-Ohio-4657, ¶ 32. *See also Petryszak v. Greegor*, 9th Dist. No. 07CA0076, 2008-Ohio-4776, ¶ 7. (applying abuse of discretion standard when reviewing denial of motion for a new trial based on argument that the

damage award was inadequate). The Estate argues that the trial court abused its discretion in denying its motion for a new trial by arguing essentially that the trial court failed to find that the jury clearly lost its way.

{¶28} The Estate's motion was predicated on Civil Rule 59, which sets forth various grounds under which a court may grant a new trial. Specifically, the Estate argued in its motion that it was entitled to a new trial pursuant to Rule 59(A)(1), (2), (4), (6), (7) and (9).

{¶29} The Estate repeatedly conveyed to the jury through counsel's statements and witness testimony that the other individuals and entities who cared for Ms. Keene had settled the claims against them. What was not told to the jury was the fact that any damages they awarded would be set-off by amounts already received from the other alleged tortfeasors. As the trial court correctly points out in its judgment entry denying the motion for a new trial, the Estate failed to submit a proposed jury instruction regarding set-off and proffered no evidence of such an agreement during the trial.

{¶30} The Estate attempted in the first instance to tell the jury about the set-off agreement during its closing statement. It stated that

> [n]ow, as you heard throughout this trial * * * the PACU team has met their responsibility and held themselves accountable[.] * * * You are not to guess or to speculate at what the PACU team settled for, the amount. You are not supposed to do that. And you don't have to do that the way our system works, because whatever verdict you give, the whole verdict - -.

The trial court sustained an objection to this statement from Dr. Taliwal. The trial court further stated when it sustained the objection that, "[t]he folks are here to deal with issues surrounding doctor Taliwal." The Estate ended its closing argument by telling the jury that, "you are to put the whole value of her life and not subtract anything or speculate, the whole value[.]" By

prohibiting the Estate from explaining the set-off agreement, the Estate argues that the jury was misinformed about the possibility of a double recovery.

{¶31} The Estate contends that comments made by Dr. Taliwal's counsel during closing statement furthered the jury's misinformation, which led to the "de minis" verdict. Dr. Taliwal's counsel stated during closing arguments that

> [T]his is all about money, ladies and gentlemen. That is what this is about. This is about money, a lot of money. [The Estate's attorneys] are very experienced attorneys. They had a party in this case who accepted responsibility, who said they were responsible for what happened here and caused this harm. * * * [I]f you think they didn't settle for full value on this case, think again, because they did.

{¶32} The Estate objected to this statement, and the trial court gave the following curative instruction:

> Ladies and gentlemen, you are to disregard * * * any conversation whatsoever regarding the value of any other settlement. You are to concern yourself here in this court with whether or not [D]octor Taliwal fell below the standard of care, and if so, whether that breach proximately caused the death to Rhonda Keene.
>
> If you get there, you may look at certain amounts of damages, if and when you get there. Again you are to concern yourself not with any other issue. That has come up in both arguments, I think both attorneys have made it clear, there has been a settlement with other parties, you know that happened, you don't need to know anything else, disregard anything else.

{¶33} The Estate argues that the jury's mistaken belief that the Estate could receive a double recovery was manifested in its calculation of damages. The Estate claims that the jury's damages award proves that it lost its way when it awarded zero damages for Ms. Keene's pain, suffering, and mental anguish. The record reflects, however, that the jury heard testimony from which it could conclude that Ms. Keene did not endure any pain or suffering following her surgery. The Estate also argues that the jury lost its way when it calculated the award for medical expenses. A review of the medical bills submitted into evidence by the Estate reveals

that the amount paid by Ms. Keen's medical insurer toward each bill matches the amount of damages awarded by the jury.

{¶34} Finally, the jury appeared to cut the funeral and burial expenses in half. While this may suggest that the jury was worried about double recovery or that they apportioned damages, there is further evidence to suggest that this may have occurred due to the jury's awareness of other "responsible parties" as introduced by the Estate or that it did not wish to award these damages.

{¶35} Revised Code 2125.02(A)(2) provides that the jury *may* award reasonable funeral and burial expenses as compensatory damages incurred as a result of a tortfeasor's action resulting in someone's death. (Emphasis added.) Nothing in the law, however, requires the jury to compensate a claimant for inevitable expenses of death.

{¶36} Further, there is evidence in the record upon which the trial court could have found that the Estate's failure to request a set-off instruction or elicit testimony regarding the matter was invited error. "The invited-error doctrine is a well-settled principle of law under which 'a party will not be permitted to take advantage of an error which he himself invited or induced." *Wojcik v. Pratt*, 9th Dist. No. 25609, 2011-Ohio-5012, ¶ 10, quoting *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co., Lincoln-Mercury Div.*, 28 Ohio St.3d 20 (1986), paragraph one of the syllabus.

{¶37} Therefore, given the fact that there is evidence in the record upon which the jury award was supported or that any error that occurred was invited, I cannot find that the trial court acted unreasonably, arbitrarily or unconscionably in denying the motion for a new trial. I would affirm the trial court's decision denying the Estate's motion for a new trial.

{¶38} Based on the foregoing, I would overrule both of the Estate's assignments of error and affirm the judgment of the trial court.

APPEARANCES:

MICHAEL F. BECKER and JOHN T. BULLOCH, Attorneys at Law, for Appellant.

PAUL W. FLOWERS, Attorney at Law, for Appellant.

CHRISTINA J. MARSHALL and JOHN V. JACKSON, Attorneys at Law, for Appellee.