DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellants, Jay and Brenda Turner ("the Turners") appeal from the trial court's denial of their motion for new trial after a jury verdict in favor of the Turners and against Appellee Matthew Buddie ("Mr. Buddie") in the amount of zero dollars in the Lorain County Court of Common Pleas. We affirm.
 {¶ 2} On July 24, 2004, the Turners filed a complaint for personal injury against Mr. Buddie based on a car accident in which Mr. Turner was injured. Judge Lynette McGough was assigned the case. Mr. Buddie admitted to negligence, leaving damages as the sole issue at trial. On October 24, 2005, the issue of damages was tried to a jury with Visiting Judge Judith Cross presiding. After a two day trial, the jury returned with a verdict in favor of the Turners in the amount of zero dollars. On November 8, 2005, the Turners moved the court for a new trial ("Motion for New Trial"). Defendant responded to the Motion for New Trial on November 22, 2005. On December 1, 2005, Judge McGough, on behalf of Judge Cross, denied the Motion for New Trial ("Denial Order"). The Turners timely appealed the Denial Order, raising one assignment of error.
 Assignment of Error
"The trial court abused its discretion by not finding that the jury's verdict was inadequate and against the manifest weight of the evidence."
 {¶ 3} The Turners assert that the trial court abused its discretion in denying the Motion for New Trial based on the manifest weight of the evidence without articulating the basis for that denial including citations to the record. The Turners assert that medical bills introduced into evidence at trial are prima facie evidence of the reasonableness of at least one element of damages that should be properly awarded to them.
 {¶ 4} The decision to grant or deny a motion for a new trial pursuant to Civ.R. 59(A) is reviewed for an abuse of discretion.Sharp v. Norfolk W. Ry. Co. (1995), 72 Ohio St.3d 307, 312,649 N.E.2d 1219. An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621,614 N.E.2d 748.
 {¶ 5} Among the reasons listed in Civ.R. 59(A), a new trial is warranted upon a finding of excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice. Here, the Turners assert that the damages awarded by the jury were inadequate given the medical bills admitted into evidence and the uncontroverted testimony of their experts.
 A. The Denial Order {¶ 6} The Turners first assert that the Denial Order itself was improper as having been signed by Judge McGough who did not preside over the trial and because the Denial Order contained no basis for the trial court's decision to deny the Motion for New Trial. We disagree with both of the Turners' assertions.
 {¶ 7} The Denial Order indicates that Judge McGough, the judge assigned to the case, was signing the entry for Judge Cross, who sat as a visiting judge on the date of trial. There is no indication that the entry reflected any other opinion than that of Judge Cross based on her review of the evidence as presiding judge at trial.
 {¶ 8} The trial court is only required to set forth the basis for its decision where it grants a motion for new trial. Antalv. Olde Worlde Products, Inc. (1984), 9 Ohio St.3d 144, 145-46,459 N.E.2d 223; Crosby v. Lenart (April 19, 1995), 9th Dist. No. 2896, at 6.
 {¶ 9} We note that "although the trial court did not have the benefit of a trial transcript, the trial judge who ruled on the new trial motion was the same judge who presided over the * * * trial," which this court has held to be sufficient. Collier v.Dorcik (Nov. 29, 2000), 9th Dist. No. 3009-M, at *2. Two other appellate courts have held that a trial court committed no error by ruling on a motion for new trial without reviewing the trial transcript when it appeared that the trial court was able to determine the issues based on its memory of the proceedings. Id.; see Zell v. Else (Nov. 7, 1996), 10th Dist. No. 96APE05-634, at *10; Ward v. Angel (June 29, 1990), 2nd Dist. No. 11902, at *27. This Court is persuaded by this reasoning. There is no reason to believe that the trial judge in this case could not rule on the issues based on her memory of the proceedings.
 {¶ 10} Accordingly, the Turners' assertions with regard to the propriety of the Denial Order are without merit.
 B. Medical Bills {¶ 11} The Turners assert that R.C. 2317.421 automatically grants them the right to a new trial where a jury disregards medical bills admitted into evidence. We disagree.
 {¶ 12} R.C. 2317.421 states that "[i]n an action for damages arising from personal injury or wrongful death, a written bill or statement, or any relevant portion thereof, * * * shall, if otherwise admissible, be prima-facie evidence of thereasonableness of any charges and fees stated therein" (emphasis added). Thus, R.C. 2317.421 creates a presumption that medical bills are themselves some evidence of their own reasonableness. However, R.C. 2317.421 does not create any presumptions about the necessity of medical services. Generally, a plaintiff must still prove by expert testimony that the bills were necessitated by the liability-inducing event. See Krasienkov. Jarnigan (Jan. 17, 1996), 9th Dist. No. 05CA006098, at *2. The only exception to this requirement is when "it is a matter of common knowledge that the care a plaintiff received can be necessary to treat the kind of injuries she suffered." Id., citing Wood v. Elzoheary (1983), 11 Ohio App.3d 27, 29,462 N.E.2d 1243. Thus, the Turners were required to establish at trial that the medical bills were necessitated by Mr. Buddie's conduct or that it is common knowledge that the treatment he received was necessary to treat his injuries. Mr. Turner asserted that he had suffered a closed head injury, neck sprain and bruised knee from the accident for which he received treatment in the emergency room some time after returning home from the accident and additional medical treatment thereafter. Drs. Sese and Collis testified on behalf of the Turners and Dr. Stearns testified on behalf of Mr. Buddie.
 {¶ 13} Because of Mr. Turner's complex medical history, it is difficult to ascertain whether or not the treatment Mr. Turner received at the emergency room or thereafter was a matter of common knowledge such that the necessity of the treatment he received should be presumed. The symptoms of which Mr. Turner complained before and after the accident were virtually identical. We must, therefore, review the evidence presented at trial as to Mr. Turner's medical history.
 A. The Turners' Expert — Dr. Sese {¶ 14} Dr. Sese testified that he first treated Mr. Turner for migraine headaches in June of 2001 and that Mr. Turner told him about having neck pain for the last few years and occasional left-side numbness associated with golf ball sized lump that sometimes appeared behind his left scapula area. Mr. Turner had previously been treated by an associate of Dr. Sese whose records indicate Mr. Turner had headache and neck pain for the last 10 years. In connection with this initial pre-accident visit, Dr. Sese ordered Mr. Turner to undergo a MRI. The result of the MRI, received on June 25, 2001, about a month before the accident, demonstrated a herniated disc and small disc protrusion. A herniated disc would cause the pain and numbness about which Mr. Turner was complaining. Dr. Sese initially treated Mr. Turner with muscle relaxants.
 {¶ 15} On August 2, 2001, Mr. Turner came to see Dr. Sese about pain he was having due to the car accident. Mr. Turner complained of more headaches and increased numbness in his left upper extremity. A second MRI was done and read by a different radiologist than the doctor that performed the first MRI. Dr. Sese initially saw no change from the MRI done a month earlier, but because of Mr. Turner's complaints of increased numbness, Dr. Sese sent Mr. Turner to a neurologist. The neurologist pointed out a slight change in the disc herniation from the first MRI. Dr. Sese again reviewed the films and concurred. The change, said Dr. Sese, correlated with the increased left side numbness. The neurologist recommended that Mr. Turner undergo a laminectomy based on his review of the MRI and Dr. Sese concurred as they had exhausted most conservative medical management making surgery reasonable.
 {¶ 16} Dr. Collis performed the surgery on Mr. Turner, but Mr. Turner continued to suffer. He continued to treat Mr. Turner through 2002. Dr. Sese later became aware that Mr. Turner had another surgery. Dr. Sese believes that the accident necessitated surgical intervention but acknowledged that Mr. Turner was having the same symptoms pre-accident.
 B. The Turners' Expert — Dr. Collis {¶ 17} Dr. Collis, the surgeon, testified that Mr. Turner first came to see him in October of 2001. Mr. Turner told him that he had been suffering from headaches and frequent pain for 15 years but that the pain was worse since the car accident. Dr. Collis testified that the pain Mr. Turner was suffering post-accident was the same type of pain but of a greater degree. Prior to the accident, Mr. Turner had been treated for his symptoms with injections, therapy, massages, and electrical stimulation, but these treatments had not helped. Dr. Collis recommended surgery. Mr. Turner continued to have shoulder pain after the surgery and was treated with cortisone injections. Mr. Turner had a second surgery of the same type on March 14, 2005. A post-surgery MRI was normal but Mr. Turner is now being treated by an arthritis specialist. Dr. Collis opined that the car accident precipitated the need for surgery, but Dr. Collis admitted he never saw the original pre-accident MRI. Finally, Dr. Collis noted that the objective problem that the surgery was meant to remedy existed before the accident. He acknowledges that the car accident did not cause the herniation and that Mr. Turner may have required surgery regardless of the accident.
 C. Mr. Buddie's Expert — Dr. Stearns {¶ 18} Dr. Stearns opined that Mr. Turner sprained his neck in the accident and that neither of Mr. Turner's surgeries nor his medical expenses related thereto was caused by the accident. He noted Mr. Turner's pre-existing injuries, the lack of a substantial difference in the two MRI's conducted just before and after the accident and noted that Mr. Turner's pre-existing injuries were not aggravated by the accident. Finally, he noted that Mr. Turner would have recovered from his neck sprain in six to eight weeks from the date of the accident. Finally, Dr. Stearns noted that Mr. Turner has been diagnosed and continues to suffer from symptoms related to fibromyalgia, a condition that is not caused by trauma.
 {¶ 19} Given Mr. Turner's pre-existing injuries and the expert testimony related thereto, our review of the record fails to demonstrate a link between the injuries incurred in the car accident and the necessity of the medical treatment Mr. Turner obtained, as set forth in the proffered medical bills, which could be constituted a matter of common knowledge. Thus, the determination of the necessity of the medical treatment must be demonstrated by expert testimony.
 {¶ 20} Drs. Sese, Collis, and Stearns testified at trial via video deposition. The trial court is in the best position to weigh the credibility of a witness, including an expert. Crossv. Cross (June 20, 2001), 9th Dist. No. 00CA0074, at 2 citingSeasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1263. Here, the jury was instructed on how to consider expert testimony as follows:
"Weight of Expert Testimony. As with other witnesses, upon you alone rests the duty of deciding what weight to give to the testimony of the experts. In deciding its weight, consider their skill, their experience, knowledge, veracity, familiarity with the facts of this case, and the usual rules for testing credibility and deciding the weight to give to the testimony."
 {¶ 21} "Absent evidence to the contrary, we indulge the presumption that the jury followed the instructions of the trial court." State v. Hodge (Oct. 18, 2000), 9th Dist. No. 09CA007056, at 6, citing State v. Ferguson (1983),5 Ohio St.3d 160, 163, 450 N.E.2d 265. Hence, we presume, absent evidence to the contrary, that the jury weighed the testimony of Drs. Sese, Collis and Stearns and found that the accident did not necessitate the medical treatment that was introduced into evidence by way of the medical bills.
 {¶ 22} Accordingly, we cannot say that the trial court abused its discretion in denying the Turners' motion for new trial. The Turners' assignment of error is overruled.
Judgment Affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellants.
Whitmore, J. Concurs.