[Cite as *Storm Kings, L.L.C. v. Shumaker*, 2025-Ohio-5845.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STORM KINGS LLC

    Appellant

    v.

RICHARD SHUMAKER

    Appellee

C.A. No.    31437

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV-2023-08-2949

DECISION AND JOURNAL ENTRY

Dated: December 31, 2025

---

SUTTON, Judge.

{¶1}    Plaintiff-Appellant Storm Kings, LLC ("Storm Kings") appeals the judgment of the Summit County Court of Common Pleas. For the following reasons, this Court affirms.

I.

**Relevant Background Information**

{¶2}    This appeal arises from a contract between Storm Kings and Richard Shumaker regarding the replacement of Mr. Shumaker's roof on his home in Tallmadge, Ohio. The roof replacement occurred over the span of three days in October of 2022. In March of 2023, Storm Kings placed a mechanic's lien on Mr. Shumaker's property which wrongly alleged the last day of work occurred on January 19, 2023. The mechanic's lien also alleged Mr. Shumaker owed Storm Kings $4,617.81 for work done on replacing the roof. Upon receiving a letter regarding the mechanic's lien from Mr. Shumaker's attorney, Storm Kings removed the lien.

{¶3}    Storm Kings then filed a lawsuit against Mr. Shumaker alleging breach of contract and unjust enrichment.  The complaint alleged Mr. Shumaker owed Storm Kings $4,617.81.  Mr. Shumaker filed an answer and counterclaim alleging Storm Kings negligently installed the shingles on the roof, damaged one of his air conditioning units, siding, screens, and driveway during the roof installation, and filed a mechanic's lien with false information causing Mr. Shumaker to incur attorney fees.

{¶4}    The matter proceeded to a bench trial before a magistrate of the trial court.  After a two day trial, wherein several witnesses testified for both Storm Kings and Mr. Shumaker, the magistrate issued a decision stating, in part:

> On Counts One and Two of Defendant Richard Shumaker's Counterclaim, the Magistrate finds in favor of Defendant Richard Shumaker and awards $17,194.62.  On Count One of Plaintiff Storm Kings' Complaint, the Magistrate finds in favor of Storm Kings and awards $4,617.81.  Count two of Plaintiff's Complaint is dismissed.  [Judgment] is granted in favor of Defendant Richard Shumaker and against Plaintiff Storm Kings, LLC in the amount of $12,576.81, with interest at the statutory rate from the date of judgment.  Costs to Plaintiff Storm Kings, LLC.

{¶5}    Storm Kings filed timely objections to the magistrate's decision, and the trial court overruled each of Storm Kings' 15 objections.  In so doing, the trial court stated, in relevant part:

> The court has taken an independent review as to the Magistrate's Decision and all objected matters, and finds that the Magistrate has proper[ly] determined the factual issues and appropriately applied the law.  The court finds all of the Magistrate's findings of fact to be reasonable and supported by the evidence.  The court further finds all of the legal conclusions to be correct.

The trial court then issued judgment in favor of Mr. Shumaker and against Storm Kings in the amount of $12,576.81, plus interest and costs.

{¶6}    Storm Kings appealed raising nine assignments of error for this Court's review. We group certain assignments of error and discuss certain assignments of error out of order to facilitate our analysis.

II.

## Standard of Review

**{¶7}** "Although the trial court must conduct an independent review of objections to a magistrate's decision, *see* Civ.R. 53(D)(4)(d), this Court's standard of review is more deferential." *Wilson v. Wilson*, 2008-Ohio-6431, ¶ 12 (9th Dist.). This Court generally reviews the trial court's ruling on objections, and its decision to adopt the magistrate's decision, for an abuse of discretion. *Id.* Under this standard, we must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

**{¶8}** In reviewing a trial court's ruling on objections to a magistrate's decision, "we consider the trial court's action with reference to the nature of the underlying matter." *Tabatabai v. Tabatabai*, 2009-Ohio-3139, ¶ 18 (9th Dist.).

## ASSIGNMENT OF ERROR I

**THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT AWARDING [STORM KINGS] PREJUDGMENT INTEREST PURSUANT TO R.C. 1343.03 ON THE COMPANY'S BREACH OF CONTRACT CLAIM.**

**{¶9}** In its first assignment of error, Storm Kings argues the trial court erred as a matter of law in failing to award Storm Kings prejudgment interest on its breach of contract claim. Specifically, Storm Kings claims it should have received prejudgment interest on the trial court's award of $4,617.81 for its breach of contract claim, which offset Mr. Shumaker's award of $17,194.62 for his counterclaims, for an aggregate judgment in favor of Mr. Shumaker in the amount of $12,576.81. For the following reasons, we are not persuaded by Storm Kings' arguments.

{¶10} In *L.A. Gross & Sons, Inc. v. Parisi*, 66 Ohio App.3d 697, 700 (9th Dist. 1990), this Court explained the interplay, regarding prejudgment interest, between an award of damages to a plaintiff and a counterclaimant in the same lawsuit. This Court stated:

> While an unliquidated counterclaim does not denude the primary claim of its liquidity, it can reduce the amount upon which the interest is calculated. A counterclaim reduces the amount due on the primary claim when the counterclaim is based upon defective workmanship or other defective performance by the plaintiff of the contract on which the liquidated claim is based. Such a counterclaim is regarded as constituting either a reduction in the amount due the plaintiff or a payment to him. The plaintiff receives interest on the balance only, for he was deprived of this amount during the pendency of the litigation.

(Internal citations omitted.)

{¶11} Here, in denying Storm Kings' objection to the magistrate's decision on this issue, the trial court stated, "[t]he court agrees with Mr. Shumaker[.] The Magistrate did not issue a net judgment in favor of Storm Kings. Therefore, [prejudgment] interest is not appropriate."

{¶12} As such, because the award to Mr. Shumaker of $17,194.62 reduced the net award in favor of Storm Kings to *$0.00*, with a net judgment in favor of Mr. Shumaker in the amount of $12,576.81, the trial court did not err in awarding no prejudgment interest to Storm Kings.

{¶13} Accordingly, Storm Kings' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

**THE TRIAL COURT ERRED AS A MATTER OF LAW DETERMINING THAT [STORM KINGS] WAS NOT A "PREVAILING PARTY."**

## ASSIGNMENT OF ERROR III

**THE TRIAL COURT ABUSED ITS DISCRETION BY NOT DETERMINING THAT THE MAGISTRATE'S DECISION WAS AMBIGUOUS STATING "COSTS TO PLAINTIFF STORM KINGS, LLC."**

**Prevailing Party and Costs**

{¶14}  The premise of Storm Kings' second and third assignments of error is that as a "prevailing party" in this lawsuit, it should have been awarded costs.

{¶15}  Civ.R. 54(D) states, "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed to the prevailing party unless the court otherwise directs."  In *Vance v. Roedersheimer*, 64 Ohio St.3d 552, 555 (1992), the Supreme Court of Ohio discussed its interpretation of Civ.R. 54(D) regarding costs.  The *Vance* Court stated:

> Our interpretation of Civ.R. 54(D) is that the phrase "unless the court otherwise directs" grants the court discretion to order that the prevailing party bear all or part of *his or her own costs*. We differ from the court of appeals in that we do not believe that such phrase empowers the court to *award costs to a non-prevailing party*. We also differ from the court of appeals in that we do not view the Vances as the prevailing party. The trial in this case, although de novo, is an appeal from an arbitration award. A party who goes into such a trial with an award of $10,000 and emerges with $5,000 can hardly be said to have prevailed.

{¶16}  In denying Storm Kings' objection to the magistrate's decision regarding its costs argument, the trial court disagreed with Storm Kings' assertion of being a "prevailing party" in this litigation.  Indeed, "[a] prevailing party is generally the party 'in whose favor the decision or verdict is rendered and judgment entered.'"  *Strip Delaware, L.L.C. v. Landry's Restaurants, Inc*., 2010-Ohio-6403, ¶ 37 (5th Dist.), quoting *Hagemeyer v. Sadowski*, 86 Ohio App.3d 563, 566 (6th Dist. 1993).

{¶17}  Here, Storm Kings' net award was $0.00 and judgment was entered in favor of Mr. Shumaker in the amount of $12,576.81, with interest at the statutory rate from the date of judgment,

and costs were assessed to Storm Kings. Thus, because Mr. Shumaker is actually the prevailing party in this litigation, the trial court did not err in assessing costs to be paid by Storm Kings.

{¶18} Accordingly, Storm Kings' second and third assignments of error are overruled.

### ASSIGNMENT OF ERROR IV

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN PERMITTING PROPRIETARY, TRADE SECRET INFORMATION ABOUT A [STORM KINGS'] WORKER'S COMPENSATION.**

### ASSIGNMENT OF ERROR VI

**THE TRIAL COURT ERRED BY NOT ADMITTING THE TK HOME INSPECTION EXPERT REPORT.**

### ASSIGNMENT OF ERROR VII

**THE TRIAL COURT ERRED BY NOT ADMITTING THE XACTIMATE REPORT EXHIBIT 12.**

**Evidentiary Rulings**

{¶19} In its fourth, sixth, and seventh assignments of error, Storm Kings argues the trial court erred in overruling certain objections on evidentiary rulings by the magistrate regarding the admission or exclusion of evidence at trial.

{¶20} "An improper evidentiary ruling constitutes reversible error only when the error affects the substantial rights of the adverse party or the ruling is inconsistent with substantial justice." *Beard v. Meridia Huron Hosp.*, 2005-Ohio-4787, ¶ 35. In determining whether substantial justice has been done, a reviewing court must weigh the prejudicial effect of the errors and determine whether the trier of fact would have reached the same conclusion had the errors not occurred. *O'Brien v. Angley*, 63 Ohio St.2d 159, 164-165 (1980). Without an outcome-determinative effect, the errors are deemed harmless. *See* Civ.R. 61.

{¶21}   Here, in overruling Storm Kings' objections regarding information about a Storm Kings' employees' manner of compensation and the TK home inspection report, the trial court indicated "Storm Kings does not develop an argument as to how these objections, if sustained, would affect the outcome of the case." Further, as to the Xactimate report, the trial court overruled Storm Kings' objection because the author of the Xactimate report admitted, during his trial testimony, that he has no training or experience in writing estimates for air conditioning systems, and he has never worked in the air conditioning or HVAC field.

{¶22}   Based upon this record, and specifically the testimony of Mr. Shumaker, Terry Kleptach, Storm Kings' HVAC expert, and Jay Faust of Crown Heating and Cooling, we cannot say any of these alleged errors pertaining to evidentiary rulings, if sustained, would have had an outcome-determinative effect in this matter. Mr. Shumaker testified in detail regarding how the damage to his air conditioning unit occurred, Mr. Kleptach testified on both direct and cross-examination about the content of the TK home inspection report and his opinion regarding the air conditioning unit, and Mr. Faust testified at length about the damage to the air conditioning unit and the options for replacement of the unit.

{¶23}   As such, testimony regarding how a Storm Kings' worker is commissioned would not be outcome-determinative in this matter. Further, the actual TK home inspection report would not be outcome determinative because Mr. Kleptach testified as to the contents of the report and his opinion regarding the air conditioning unit after his inspection. Finally, the Xactimate report would not be outcome determinative because the author of the report had no credentials in HVAC work. Therefore, the trial court did not err in overruling Storm Kings' objections in this regard because any error in the admission or exclusion of this evidence would be harmless.

**{¶24}** Accordingly, Storm Kings' fourth, sixth, and seventh assignments of error are overruled.

**ASSIGNMENT OF ERROR VIII**

**THE TRIAL COURT ERRED CONCLUDING THAT [STORM KINGS] WAS THE PROXIMATE CAUSE OF DESTROYING THE CONDENSER LOCATED IN THE INTERIOR OF THE SHUMAKER AIR CONDITIONER.**

**ASSIGNMENT OF ERROR V**

**THE TRIAL COURT ERRED AS A MATTER OF LAW BY INCORRECTLY AWARDING DAMAGES FOR THE FULL-REPLACEMENT COST OF A 23-YEAR-OLD AIR CONDITIONER.**

**Negligence and Damages**

**{¶25}** In its fifth and eighth assignments of error, Storm Kings argues the trial court erred in concluding Storm Kings was the proximate cause of the damage to the condenser located inside the interior of Mr. Shumaker's air conditioning unit and the trial court erred in awarding damages for the full replacement cost of the air conditioning unit.

**{¶26}** "In order to establish an actionable claim of negligence, a plaintiff must show the existence of a duty, a breach of that duty, and an injury that was proximately caused by the breach." *Roth v. Tokar Tower Off. Condominiums Unit Owners' Assn, Inc.*, 2023-Ohio-279, ¶ 17 (9th Dist.), quoting *Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745, ¶ 10. "The failure to prove any one of these elements is fatal to a claim of negligence." *Id*. "The 'proximate cause' of a result is that which in a natural and continued sequence contributes to produce the result, without which it would not have happened." *Roth* at ¶ 17, quoting *Waugh v. Chakonas*, 2011-Ohio-2764, ¶ 8 (9th Dist.), quoting *Bell v. Babcock & Wilcox Co.*, 1993 WL 329900, * 2 (9th Dist. Sept. 1, 1993), quoting *Piqua v. Morris*, 98 Ohio St. 42 (1918), paragraph one of the syllabus.

{¶27} During the bench trial, Alan Shumaker, Mr. Shumaker's son, testified his father's air conditioning unit worked prior to October 2022, when the roof had been replaced by Storm Kings. Alan testified, after the incident in question, the disconnect box, or electrical box, was pulled loose from the house, "[k]ind of dangling off to the side." Alan also testified he was present on the first occasion when a technician from Crown Heating and Cooling came out to inspect the air conditioner. At that time, Alan noticed damage to the fan blade, shaft, and coils. Alan further indicated this damage did not exist prior to Storm Kings replacing his father's roof.

{¶28} Mr. Shumaker testified he watched Storm Kings remove the last of the shingles from his roof when he "heard a big noise, and it happened fast." Mr. Shumaker explained that Storm Kings' workers had a tarp over the air conditioning units, one for the first floor of the house and one for the second floor of the house, and the workers would push the shingles over the edge of the roof with either a shovel or their feet and catch the shingles in the tarp. The tarp was so heavy from the weight of the shingles, it took three people to move it. However, when Mr. Shumaker heard the "big noise," there were no tarps there. Mr. Shumaker explained the shingles "just banged down[,]" and the "roofers [] shrugged their shoulders, and they just continued to finish the last 12 inches of the roof, to scrape it off." Mr. Shumaker indicated that an employee of Storm Kings, Stephen James, saw this happen and said, "this is no biggy." Mr. Shumaker stated the cables from the air conditioner were pulled out of the back corner of the "condenser unit[,]" and the cables were pushed down into the limestone surround. Additionally, Mr. Shumaker testified that Mr. James attempted to push the siding back into the house, which he could not do, and he tried to lift the cables up that were "smashed down into the limestone[,]" which he also could not do.

{¶29}  Mr. Shumaker hired Crown Heating and Cooling to inspect and repair his air conditioning unit.  Mr. Faust, the manager of Crown Heating and Cooling's commercial and residential service department, testified the condenser fan and motor in Mr. Shumaker's air conditioner were bent and/or broken and needed to be replaced.  Once the condenser fan and motor were replaced, a Crown technician attempted to operate the air conditioning unit, but could not do so because of a large leak at the bottom of the condenser coil.  Mr. Faust explained the unit "had lost its refrigerant charge."  With respect to the condenser coil, Mr. Faust testified:

> The tech that was working for us at the time, when he pressurized the coil with nitrogen, he found at the very base of one of the edges of the condenser coil, it had ruptured.
>
> There was no space between the condenser pan and that coil itself.  So at this point we could only surmise that that's where the problem was.

Moreover, Mr. Faust explained there should be a ¼ to 1-inch gap between the condenser pan and the coil.

{¶30}  Mr. Faust also testified regarding the options of repairing or replacing the air conditioner unit.  Mr. Faust explained that Mr. Shumaker's current unit used a refrigerant  known as R22, which is no longer manufactured in the United States due to its very high global warming potential.  Mr. Faust testified although you cannot any longer purchase R22 new in the United States, you can purchase reclaimed or remanufactured R22 which is very expensive, but his company will not do so because it is more ethical to use a different refrigerant.  Further, Mr. Faust indicated replacing a whole new system with a different refrigerant is comparable in cost to purchasing reclaimed or remanufactured R22 for an older unit.  As such, Mr. Faust testified that Crown Heating and Cooling presented Mr. Shumaker with three different options for replacing his air conditioning unit, ranging from "almost [$]15,000 to almost $17,000.00."

{¶31} In denying Storm Kings' objection regarding proximate causation, the trial court stated, "[a]gain, Storm Kings fails to develop a cohesive argument in support of this objection." The trial court indicated Storm Kings was "at best disingenuous," in directing it to the testimony of Brandon Tournoux, a Storm Kings' employee, who was not present at Mr. Shumaker's home when the incident occurred, and Terry Kleptach, Storm Kings' HVAC expert, who admitted he did not take the top off the air conditioning unit when he performed a visual inspection, did not know if there was refrigerant in the system, and did not use gauges to inspect the system.

{¶32} As to the denial of Storm Kings' objection to the amount of damages awarded for a replacement air conditioning unit, the trial court stated, "the testimony does not support Storm Kings' claim that repairing the air conditioning unit was a cost effective option."

{¶33} In light of this record, we cannot say the trial court erred in overruling Storm Kings' objections to proximate causation and damages because the magistrate's decision is supported by some competent, credible evidence.

{¶34} Accordingly, Storm Kings' fifth and eighth assignments of error are overruled.

<u>ASSIGNMENT OF ERROR IX</u>

**THE TRIAL COURT ERRED AS A MATTER OF LAW DETERMINING THAT BECAUSE [STORM KINGS] "DID NOT TIMELY REQUEST FINDINGS OF FACT AND CONCLUSIONS OF LAW," STORM KINGS' OBJECTIONS TO THE MAGISTRATE'S CONCLUSIONS OF LAW WERE DEEMED "INSUFFICIENT."**

<u>Civ.R. 53</u>

{¶35} In its ninth assignment of error, Storm Kings argues the trial court erred in deeming its objections to the magistrate's conclusions of law "insufficient" because Storm Kings did not timely request findings of fact and conclusions of law. In their briefs, the parties rely upon Civ.R. 52, instead of Civ.R. 53, which is specific to magistrates. Both Civ.R. 52 and Civ.R 53 contain

nearly identical language pertaining to requesting findings of fact and conclusions of law in a decision.

{¶36} Civ.R. 53(D)(3)(a)(ii) provides:

Subject to the terms of the relevant reference, a magistrate's decision may be general unless findings of fact and conclusions of law are timely requested by a party or otherwise required by law. *A request for findings of fact and conclusions of law shall be made before the entry of a magistrate's decision or within seven days after the filing of a magistrate's decision.* If a request for findings of fact and conclusions of law is timely made, the magistrate may require any or all of the parties to submit proposed findings of fact and conclusions of law.

(Emphasis added.)

{¶37} Here, Storm Kings' objection stated:

The Magistrate awarded [Mr.] Shumaker "14,960 for the cost to replace his upstairs air [conditioner]." However, the Magistrate did not indicate the legal standard that the damages were calculated other than a determination that "the most cost effective way to fix the broken air conditioner is to install a new unit." There is no conclusion of law regarding whether the proximate damages were awarded based on Mr. Shumaker's actual damages, compensatory, consequential, economic waste, expectation interest, incidental loss, diminution in the marked price of the property, or diminution in value of the air conditioner.

{¶38} In overruling Storm Kings' objection regarding the legal standard used to determine the "measure of damages" in this matter, the trial court stated in part:

To the extent that Storm Kings argues the *Magistrate's conclusions of law are insufficient*, it did not timely request findings of fact and conclusions of law.

(Emphasis added.) *See Hutta v. Hutta*, 2011-Ohio-3041, ¶ 15 (5th Dist.) ("If a magistrate has not prepared findings of fact or has prepared findings of fact that are insufficient, the burden is on the party objecting to request findings of fact from the magistrate pursuant [] [Civ. R. 53]. By failing to request more specific findings of fact regarding what sources of income the magistrate considered, Appellant has waived any claim the magistrate did not consider all sources of income

as recited in the findings of fact and the opinion of the trial judge overruling Appellant's objections."). (Internal citations omitted.)

{¶39} Although, here, the magistrate did include findings of fact and conclusions of law in his decision, Storm Kings did not request, in writing, findings of fact and conclusions of law that were more specific or detailed than those provided by the magistrate. Prior to the magistrate's decision, or within seven days after the filing of the magistrate's decision, Storm Kings could have requested, in writing, more specific findings of fact or conclusions of law. Storm Kings, however, did not make this request. As such, we cannot say the trial court erred in overruling this objection.

{¶40} Accordingly, Storm Kings' ninth assignment of error is overruled.

III.

{¶41} For the reasons set forth above, Storm Kings' nine assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to

mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

———————————————————
BETTY SUTTON
FOR THE COURT

FLAGG LANZINGER, P. J.
STEVENSON, J.
CONCUR.


APPEARANCES:

BRADLEY S. LE BOEUF, Attorney at Law, for Appellant.

MICHAEL J. MORAN, Attorney at Law, for Appellee.